### ARGUED AND DETERMINED

###### IN THE

# SUPREME JUDICIAL COURT

###### OF

# MASSACHUSETTS.

---

ANNA HERMANNS *vs.* HENRY W. FANNING & others.

Norfolk.    November 19, 1889. — January 6, 1890.

Present: FIELD, DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Equity — Mortgage of Real Property — Payment and Discharge — Equity of Redemption — Laches.*

On a bill in equity, filed June 22, 1889, for the recovery of land, it appeared that in 1863 it was mortgaged for the term of three years, the buildings thereon being insured for the mortgagee's benefit. Subsequently to September 4, 1874, a fire occurred, and the insurer offered to pay the mortgagee if he and the then owner of the equity would give receipts, but the latter refused to do so save upon the assignment of the mortgage to a third person. This was agreed to, and the insurer paid the insurance to the mortgagee, the owner of the equity paid the balance due on the mortgage, and the assignment was made. Afterwards, on October 19, 1874, the owner of the equity, who never agreed to assume the mortgage, conveyed the "premises" to one, and on February 1, 1876, the assignee of the mortgage assigned it to another, who duly sold the land under a power in the mortgage, and the defendants on June 20, 1876, bought it in good faith and for a fair price from a succeeding purchaser, and entered into possession. On October 20, 1876, the grantee of the owner of the equity of redemption sought in equity to recover the land from the defendants and cause the mortgage to be discharged, but his bill was dismissed by agreement; and on June 12, 1886, he conveyed the land subject to the mortgage to the plaintiff, who knew of his grantor's bill in equity and of its disposition. *Held,* that the payments by the insurer and by the owner of the equity to the mortgagee did not operate to discharge the mortgage, that the plaintiff was affected by his grantor's laches, and that the defendants had the better title.

BILL IN EQUITY, changed in the Superior Court from a writ of entry, and filed June 22, 1889, for the recovery of a parcel of land in Needham, and for other relief. Hearing before *Bishop*, J., who made a decree dismissing the bill, and reported the case for the determination of this court. If the plaintiff could maintain her bill, a decree was to be made directing a conveyance of the land to her; otherwise, the decree was to be affirmed.

*W. Emery & W. M. Stockbridge*, for the plaintiff.

*C. F. Jenney*, (*J. E. Cotter* with him,) for the defendants.

FIELD, J. It appears from the report, that one Grover owned certain land in Needham, in the county of Norfolk; that on April 25, 1863, he mortgaged it to the Dedham Institution for Savings; and that afterwards he conveyed the equity of redemption, subject to this mortgage, to Ellen F. Starbuck. After her decease, the administratrix of her estate, on September 4, 1874, acting under a license from the Probate Court, sold and conveyed this equity to Charles W. Farnham. He, on October 19, 1874, conveyed the " premises " to Samuel Tompson, who, on November 18, 1874, conveyed them back to Charles W. Farnham, and he on the same day mortgaged them to Tompson. Tompson, acting under the power of sale contained in his mortgage, sold and conveyed the premises to himself, and afterwards, on June 12, 1886, conveyed them to the plaintiff, excepting the mortgage to the Institution for Savings from the covenant against incumbrances, and from the covenant of warranty. All these conveyances were duly recorded.

The mortgage to the Institution for Savings was given to secure the payment of fifteen hundred dollars in three years from its date, and it contained an agreement that the mortgagor should keep the buildings insured in the sum of fifteen hundred dollars for the benefit of the mortgagee. After the conveyance by the administratrix of the estate of Starbuck to Charles W. Farnham, the buildings were destroyed by fire, being then insured by two policies of insurance in the sums respectively of nine hundred and six hundred dollars. The insurance companies were willing to pay these sums, provided the Institution for Savings and Charles W. Farnham, who then owned the equity of redemption, would both sign receipts for the money paid; but Charles W. Farnham refused to sign a receipt unless the

Institution for Savings would assign the mortgage to his brother, David S. Farnham. The amount then due on the mortgage was between fifteen and sixteen hundred dollars. The result was that the insurance companies paid the sums of nine hundred dollars and six hundred dollars to the Institution for Savings; Charles W. Farnham, with his own money, paid the balance due on the mortgage, and the Institution for Savings assigned it to David S. Farnham. David S. Farnham afterwards, on February 1, 1876, assigned the mortgage to one Dow, who entered upon the premises, and sold and conveyed them, under the power of sale contained in the mortgage, to one Tupper, who afterwards conveyed them to Dow, and Dow subsequently, on June 20, 1876, conveyed them by warranty deed to the defendants. No question is made of the "regularity" of the proceedings under the power of sale.

The report also finds, that " the defendants bought said premises in good faith, without any knowledge or suspicion of defect in title, unless the fact that the buildings had been recently destroyed by fire, of which they had knowledge, would in law charge them with notice of defect, and caused the title to be examined by a conveyancer, who reported to them that it was good, and they paid therefor a valuable consideration, the same being a fair price for the land."

On the face of the record in the registry of deeds, it is plain that the defendants have a good title. The contention is, that the mortgage to the Institution for Savings was in legal effect discharged by the payments made by the insurance companies and by Charles W. Farnham. These payments were made a long time after the debt secured by the mortgage had become payable, and the payments therefore did not of themselves, as matter of law, operate as a discharge of the mortgage. *Holman* v. *Bailey*, 3 Met. 55.

Whether purchasers of the land who took conveyances subsequent to this mortgage could have compelled David S. Farnham to discharge it would depend upon the terms of the conveyances. If the conveyances by Charles W. Farnham were of the equity of redemption only, subject to this mortgage, then upon paying it he was with respect to these purchasers entitled to be subrogated to the rights of the mortgagee against the land; otherwise,

they would become the owners of an unincumbered title to the land, without having paid for anything but the equity of redemption. *Johnson* v. *Zink*, 51 N. Y. 333. *Jumel* v. *Jumel*, 7 Paige, 591. *Kinnear* v. *Lowell*, 34 Maine, 299. *Barker* v. *Parker*, 4 Pick. 505. Sheldon on Subrogation, § 26. 2 Washb. Real Prop. (5th ed.) 227. 3 Pom. Eq. Jur. § 1204.

Apparently the facts in the present case bring it within this rule, although the report is not so explicit as it might be in this respect, and we have not been furnished with copies of the deeds. On the facts, as we understand them, the mortgage to the Dedham Institution for Savings after it was assigned remained a valid outstanding mortgage against the persons claiming under Charles W. Farnham. We do not understand that Charles W. Farnham in any of the conveyances by or to him promised to assume and pay this mortgage.

It appears also that Tompson, on October 20, 1876, apparently then being the holder of the mortgage given to him by Charles W. Farnham, brought a suit in equity against the defendants in the present suit for the purpose of compelling them to convey to him whatever title they had acquired by the conveyance from Dow, and of obtaining a decree that the mortgage to the Institution for Savings be cancelled and discharged. The defendants in that suit appeared and answered, and the parties filed in the suit an agreement that the bill might be dismissed without costs, and on November 29, 1877, an entry was made on the docket of the court as follows : " Bill dismissed without costs by agreement." It does not appear from the papers before us when the present suit was brought, but it must have been brought after the plaintiff received her conveyance, which was on June 12, 1886. The present suit was originally a writ of entry, but it was changed by the consent of the parties, with the permission of the court, into a suit in equity ; and the bill in equity was filed on June 22, 1889. At this time the defendants had been in possession of the premises more than thirteen years, having, as the report finds, entered into possession at the time of the conveyance to them on June 20, 1876 ; the plaintiff in the present suit claims title under the deed from Tompson, which was given on June 12, 1886, between eight and nine years after his bill assailing the title of the defendants had been dismissed.

If it were true that the title of the plaintiff was not conveyed to her subject to the mortgage to the Institution for Savings, or that Charles W. Farnham had in his mortgage deed to Tompson covenanted to assume and pay this mortgage, so that it would have been his duty, as against the plaintiff, to pay it, still the mortgage would not have been actually discharged, there would have been only an equitable right to have it discharged; and there is strong ground for holding that the existence of this equitable right would not avail against the defendants, who purchased the land in good faith, for value, without notice of this equity, relying upon the record. A sale duly made under a power of sale contained in a mortgage is not an assignment of the mortgage; it is a conveyance of the land. Besides, Tompson, if he intended again to attack the defendants' title, has been guilty of laches, and we cannot see that the plaintiff has any greater rights than Tompson would have had. The report finds that the plaintiff, at the time she took her conveyance, "had been informed that the prior bill had been brought, and that it had been disposed of." See *Montague* v. *Dawes*, 12 Allen, 397; *Hall* v. *Bliss*, 118 Mass. 554; *Merchant* v. *Woods*, 27 Minn. 396.

It is unnecessary to consider whether the decree in the former suit was a bar to the maintenance of this suit, because the other facts found by the court are decisive of the case. By the terms of the report, the decree dismissing the bill must be affirmed.

*Decree affirmed.*