WILLIAM BUCKLEY vs. PANDELI JOHN & others.

Worcester.    September 27, 1943. — October 29, 1943.

Present: FIELD, C.J., DONAHUE, QUA, & DOLAN, JJ.

*Jurisdiction*, Over the person, Nonresident defendant, By consent or waiver. *Equity Pleading and Practice*, Parties; Appearance; Demurrer; Bill; Master: recommittal, report of evidence. *Fraudulent Conveyance. Equity Jurisdiction*, To reach and apply, Fraudulent conveyance.

A defendant in a suit in equity to enforce a claim for services rendered, who had not been served with process in this Commonwealth, voluntarily submitted himself to the jurisdiction of the court where, after he had filed a special appearance and pleadings contending want of jurisdiction, which were overruled, he filed a document entitled "plea in bar" in which, while he asserted that he did not waive his "special appearance to the jurisdiction," he nevertheless stated that he was "willing that the court establish what . . . [was] a reasonable sum to award the plaintiff, if anything."

A demurrer to a bill in equity as a whole was properly overruled where the bill, although it contained immaterial matter and averments of untenable grounds of relief, did set forth one valid cause of action with sufficient clarity and detail.

A motion for recommittal of a report to a master in a suit in equity for a statement of a summary of evidence on certain issues properly was denied as a matter of law where objections to the master's report did not raise questions of law depending upon evidence not reported except questions as to whether there was evidence sufficient in law to support certain findings, as to which it did not appear that there was compliance with the provisions of Rule 90 of the Superior Court (1932) respecting the selection or approval by the master of a stenographer to take the evidence and the furnishing to the master of a transcript of the evidence.

An attorney at law, who had a claim against a client for services rendered and expenses incurred in the prosecution to judgment of litigation against the client's brother, where it appeared that, while the attorney was in possession of the execution issued upon the judgment, the brother, scheming with the client to deprive the attorney of any rights he might have by reason of the execution and on a levy then being made, and to prevent his receiving satisfaction of his claim, paid to the client part of the judgment and the client released all his claims against the brother and all attachments and the levy on the brother's real estate, was entitled to maintain a suit in equity against the client and the brother to have set aside the client's release as a fraudulent con-

veyance under G. L. (Ter. Ed.) c. 109A and to have the judgment applied in satisfaction of the plaintiff's claim by requiring the brother to pay the judgment to the plaintiff to the extent of that claim; and the plaintiff, having become a creditor of the brother by reason of the statute, also was entitled to have set aside as fraudulent conveyances mortgages by the brother of his real estate given to other defendants without consideration and with intent to defraud the brother's creditors.

BILL IN EQUITY, filed in the Superior Court on February 25, 1941, for which a substitute bill afterwards was filed by leave.

The bill was taken pro confesso as to the defendants Vangel.

The case was heard in the Superior Court, upon the various matters described in the opinion, by *Leary, J., Hammond, J.,* and *Giles, J.,* respectively.

The final decree adjudged that the reasonable value of compensation for services and expenses of the plaintiff as attorney for the defendant Pandeli John was $2,120.89; that the defendants John owed the plaintiff that sum and interest; and that the Vangel mortgages "be and the same are hereby discharged." Demetri John was enjoined from conveying or encumbering certain real estate until the plaintiff's claim was satisfied. Paragraphs 6, 7, 8, and 9 of the decree, referred to in the opinion, read as follows: "6. That a lien upon the execution, which issued in the action Pandeli John *vs.* Demetri John, as provided in G. L. (Ter. Ed.) c. 221, § 50, be and the same is hereby established in favor of the plaintiff. 7. That the lien shall be null and void upon and after the payment to the plaintiff by or at the direction of Pandeli John or Demetri John of the aforesaid sum of $2,120.89, together with interest and costs . . . . 8. That satisfaction of the lien shall, to the amount of such satisfaction, be credited against the aforesaid sum of $2,120.89, with interest and costs as aforesaid, owed to the plaintiff by the defendants Pandeli John and Demetri John. 9. That the payment to the plaintiff of the sum of $2,120.89, together with interest and costs as aforesaid, or any portion thereof, by or at the direction of either Pandeli John or Demetri John, or satisfaction of the obligation to pay said sum obtained against the property

of either, shall, to the extent of such payment or satisfaction, discharge the obligation of the other."

*F. P. McKeon*, for the defendants.

*S. B. Milton*, (*R. C. Milton* with him,) for the plaintiff.

QUA, J. The plaintiff is an attorney at law. The defendant Pandeli John was formerly a client of the plaintiff for whom the plaintiff successfully conducted an action at law in which he obtained a judgment against the defendant Demetri John in the sum of $5,872.24. *John* v. *John,* 307 Mass. 514. The remaining defendants, John Vangel and Zoitsa Vangel, are the joint holders of two mortgages on real estate of Demetri John alleged in the plaintiff's substitute bill to have been given without consideration for the purpose of defrauding Demetri John's creditors, including the plaintiff. The object of the bill is to collect the sum alleged to be due from the defendant Pandeli John to the plaintiff for his services and disbursements in the action of *John* v. *John* and to reach and apply in payment thereof the judgment recovered through the plaintiff's efforts against the defendant Demetri John and the execution thereon, which the plaintiff holds in his possession.

The first question is whether Pandeli John has actually become a defendant in the suit. He is described in the bill as of Thompson, Connecticut, and, so far as appears, has not been served with process in this Commonwealth. He appeared specially and filed an anomalous "Motion to Dismiss," which was "denied," and an appeal was taken. He then filed a plea to the jurisdiction, which was also "denied" for reasons not stated, and no appeal was taken. See *Stone Leather Co.* v. *Henry Boston & Sons, Ltd.* 234 Mass. 477, 478. Thereafter, still attempting to insist upon his motion and his plea, he filed an answer to the merits in which he included a counterclaim. We are not inclined to regard the counterclaim as a general submission to the jurisdiction for the reason that he was probably required to file it by Rule 32 of the Superior Court (1932) or run the risk of losing rights. But later on, after the plaintiff had been allowed to file a substitute bill, the defendant Pandeli John filed a so called "Plea in Bar" wherein, although still asserting

that he does not waive his "special appearance to the jurisdiction," he says that he is willing and able to pay the plaintiff a reasonable sum for services rendered, "wherefore, he is willing that the court establish what is a reasonable sum to award the plaintiff, if anything." This so called "plea" states no defence to the suit. It is not a recognized form of pleading. No requirement of practice compelled him to file it in order to proceed with the defence of the suit in obedience to the decisions of the court overruling his motion and his original plea. It must be deemed a purely voluntary submission on his part to the judgment of the court of one of the principal issues in the suit. It is inconsistent with continued reliance upon his special appearance and constitutes a general appearance. In *Gahm* v. *Wallace*, 206 Mass. 39, at pages 44 and 45, this court, speaking through Chief Justice Knowlton, said, "It is a familiar rule that, if one appears generally in a case, or asks the court to do anything which involves the exercise of jurisdiction over the parties, he waives all questions in regard to service and submits himself to the jurisdiction of the court." *Britton* v. *Goodman*, 235 Mass. 471, 475. *Karrick* v. *Trask*, 238 Mass. 476, 478–479. *Rollins* v. *Bay View Auto Parts Co.* 239 Mass. 414, 423. *Hull* v. *Adams*, 286 Mass. 329, 332–333. *Lapresti* v. *Burton*, 295 Mass. 6. *Tobin* v. *Downey*, 310 Mass. 721, 723–724. *Merchants Heat & Light Co.* v. *J. B. Clow & Sons*, 204 U. S. 286. *American Mills Co.* v. *American Surety Co. of New York*, 260 U. S. 360, 366.

The plaintiff's substitute bill, after narrating his services in the action of *John* v. *John*, and after stating that the execution in that action was worth approximately $6,000, and after describing the steps that the plaintiff had taken to commence the levy of it upon the real estate of Demetri John, alleges in substance, among other things, that the defendants Pandeli John and Demetri John, who are brothers, conspired together to destroy the plaintiff's right to satisfy his claim for services, alleged to amount to about $2,000, out of the execution and to hinder, delay, and defraud the plaintiff as a creditor of Pandeli John, and that

in pursuance of such conspiracy Demetri, without the plaintiff's knowledge, paid directly to Pandeli the sum of $4,000, and Pandeli released all claims against Demetri and discharged the attachment on Demetri's real estate and "the levy on the execution." There are further allegations that the plaintiff had "an equitable right" and a "contract right" in the execution and "a lien" upon it, that Pandeli John had "agreed" to the plaintiff's claim that he had "an interest" in the execution; and that both the defendants knew all the facts. It is further alleged that Pandeli John is insolvent and unable to pay the plaintiff.

There was no error in overruling the demurrers of Pandeli John and Demetri John. Both demurrers are to the whole bill and not to any separate parts of it. The bill states facts which disclose a cause of action in equity against both of these defendants based upon a conveyance in fraud of the plaintiff as a creditor of Pandeli John. The grounds will more fully appear when we come to discuss the case on the merits. The bill is certainly not multifarious. *Bliss* v. *Parks*, 175 Mass. 539, 541–543. It apparently does attempt to state more than one ground for relief. It places undue emphasis upon "malice" and upon charges of "conspiracy" which amount at most to nothing more than allegations of joint action and do not in themselves constitute a separate reason for maintaining this suit in equity. *Fleming* v. *Dane*, 304 Mass. 46, 50–51. And it asserts a lien upon the judgment for counsel fees, although the attorney's lien upon a judgment obtained through his efforts does not ordinarily extend in this Commonwealth to counsel fees not included in taxable costs. *Blake* v. *Corcoran*, 211 Mass. 406, 407. *Check* v. *Kaplan*, 280 Mass. 170, 174. Apparently the pleader intended to claim an equitable lien arising from contract under the doctrine of *Delval* v. *Gagnon*, 213 Mass. 203. Whether or not he succeeded in this particular aspect of the bill, the demurrer to the bill as an entirety cannot be sustained if the bill states a good cause of action on any single ground. *Carleton & Hovey Co.* v. *Burns*, 285 Mass. 479, 484–485. In our opinion the bill is not fairly open to any of the various objections

as to form set forth in the demurrers. It contains much that we regard as immaterial, but the facts constituting the cause of action upon which we believe the case should be decided are alleged with sufficient clarity and detail and are not obscured or clouded by irrelevant or argumentative matter. *Shea* v. *Shea,* 296 Mass. 143, 147. *Bliss* v. *Parks,* 175 Mass. 539, 546.

There was no error in denying the motions of the defendants John to recommit to the master, even if we go so far as to assume, but without deciding, that the orders on both motions are now open on the appeals from the final decree, though only the defendant Demetri John appealed from the denial of his motion. These defendants do not show that they were entitled to have the master append summaries of the evidence to his report under the second paragraph of Rule 90 of the Superior Court (1932). Their objections do not raise designated "question[s] of law which . . . [depend] upon evidence not reported" in accordance with the first sentence of that paragraph, except in so far as they raise questions whether the evidence was sufficient in law to support the findings. With that exception, they do not state any identifiable "question[s] of law" that have been passed upon by the master in specified rulings to which objection was taken. *Buckley & Scott Utilities, Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498, 507–508. Their character is described in the next paragraph of this opinion. In so far as the objections raise in various forms questions whether the evidence was sufficient in law to support the findings, these defendants were entitled to summaries only if the evidence had been taken by a stenographer selected or approved by the master before any evidence was introduced, and if the objecting party had furnished the master with a transcript of the material portions of it. See the second sentence of the second paragraph of the rule. Affidavits that may have been before the judge at the hearing on the motion recite that the evidence was taken by a "commissioner under" the rule. The plaintiff in his brief denies that this was the fact, and what, if any, evidence other than the affidavits may have been before the

judge does not appear. Even the affidavits contain no statement that the master had been furnished with a transcript as required by this part of the rule, and there is nothing whatever in the record to show that this condition precedent required by the rule was performed. *George C. Miller & Co. Inc.* v. *Beagen*, 293 Mass. 54, 57. The remaining grounds for the motions to recommit — that additional and more definite facts be reported, and that all the evidence be reported — rested in the sound discretion of the judge. *Pearson* v. *Mulloney*, 289 Mass. 508, 513. *MacLeod* v. *Davis*, 290 Mass. 335, 338.

There was no error in overruling the exceptions founded upon the objections of the defendants John to the master's report or in confirming the report. Most of these exceptions fall into familiar categories of exceptions which it is well settled cannot be sustained. Many of them rest upon objections that findings of fact are unsupported by evidence or are erroneous, although the evidence is not reported. *Morin* v. *Clark*, 296 Mass. 479, 484. Others rest upon objections that the master has failed to find certain facts. *Anderson* v. *Connolly*, 310 Mass. 5, 10. Others are simply bald assertions of fact. *Zuckernik* v. *Jordan Marsh Co.* 290 Mass. 151, 155. A few refer to the question of jurisdiction over Pandeli John with which we have already dealt. The so called "Evidential Objections" apparently relate to all evidence upon certain subjects. They do not identify particular rulings of the master to which objection was intended. *Meehan* v. *North Adams Savings Bank*, 302 Mass. 357, 363. In general, evidence upon those subjects was competent under the pleadings. None of the exceptions is well taken. *Leventhal* v. *Jennings*, 311 Mass. 622, 624.

We come now to the merits of the case on the findings of the master. The master fixes the fair value of the plaintiff's services to Pandeli John at $2,000, in addition to which Pandeli owes the plaintiff expenses amounting to $120.89. There are also the following determinative findings: The defendants Pandeli John and Demetri John agreed between themselves to settle the judgment and execution in the case

of *John* v. *John* for $4,000, and "motivated by ill will toward the plaintiff" they "conspired and agreed to deprive the plaintiff of any rights which he might have by reason of the execution which he had in his possession and on the levy then being made." Demetri paid Pandeli $4,000 in cash in return for a release of all claims of Pandeli against Demetri. Pandeli thereupon discharged all attachments upon Demetri's real estate including "the execution and levy on the execution." Pandeli and Demetri deliberately withheld from the plaintiff any information of this settlement. This agreement was carried out between the brothers Pandeli and Demetri for the purpose of harming the plaintiff and "of destroying any rights which he might have in the execution and of preventing him from collecting a reasonable fee for his services." The plaintiff's claim against Pandeli John is not collectible against Pandeli in Connecticut where he lives. The defendants Pandeli John and Demetri John "conspired in a scheme to make a settlement of the judgment and execution so as to deprive the plaintiff of any rights which he might have in the execution and so as to prevent him from collecting from Pandeli John" for his services. There are further findings that the Vangel mortgages on real estate of Demetri John were given and accepted without consideration and for the purpose of defrauding present and future creditors of Demetri John.

The findings of the master demonstrate that the release by Pandeli John of his judgment against Demetri John was made "with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud" his creditors, and was therefore a fraudulent conveyance as to the plaintiff under the provisions of § 7 of G. L. (Ter. Ed.) c. 109A (the uniform fraudulent conveyance law). Under the definitions contained in § 1 the plaintiff was a "creditor," and the release was a "conveyance." *Anderson* v. *Metropolitan Stock Exchange*, 191 Mass. 117, 121–122. *Wilson* v. *Holub*, 202 Iowa, 549, 554–556. *Hubble* v. *Dunlap*, 101 Ky. 419. *Sullivan* v. *B. S. Canner, Inc.* 33 Fed. Sup. 500, 503. *Arthur* v. *Morrow Brothers*, 131 Md. 59, 69. See *Desaman* v. *Butler Brothers*, 118 Minn. 198, 203; *Young* v. *Dearborn*, 27 N. H.

324; *Martin* v. *Hawks*, 15 Johns. 405. And since Demetri John was a participant in the fraud and was not a "purchaser" "without knowledge" of it, the plaintiff is entitled under § 9 to have the release "set aside . . . to the extent necessary to satisfy his claim." See *Dondis* v. *Lash*, 277 Mass. 477, 484, 485; *Service Mortgage Corp.* v. *Welson*, 293 Mass. 410. With the release out of the way, the judgment of Pandeli John against Demetri John is regarded in equity as still remaining in force for the purpose of satisfying the plaintiff's claim against Pandeli John, and can be reached and applied in a simple manner by requiring Demetri John to pay it to the plaintiff to the extent of the plaintiff's claim. It is not important in this case whether in theory this is deemed to be accomplished through the medium of G. L. (Ter. Ed.) c. 214, § 3 (7), relative to suits to reach and apply property which cannot be attached or taken on execution in an action at law (*Orange Hardware Co.* v. *Ryan*, 272 Mass. 413; *Motoreze Oil Co., Inc.* v. *Brennan*, 279 Mass. 375), or whether the uniform fraudulent conveyance law is so construed as in itself to authorize by implication the use of all equity powers necessary to the final satisfaction of the creditor's claim. *Powers* v. *Heggie*, 268 Mass. 233, 241–242. *Proctor* v. *MacClaskey*, 278 Mass. 238, 242–243. *Walworth Co.* v. *Lock Stevens & Sanitas, Inc.* 300 Mass. 557, 559. *American Surety Co. of New York* v. *Conner*, 251 N. Y. 1, 7. In any event, the plaintiff is entitled to an effective remedy in equity. The plaintiff, having now, because of the fraudulent conveyance, become a creditor of Demetri John as well as of Pandeli John, is also entitled in this same suit to have set aside the Vangel mortgages, which were fraudulent as to subsequent creditors of Demetri John. See definition of "creditor" in G. L. (Ter. Ed.) c. 109A, § 1, and see also G. L. (Ter. Ed.) c. 214, § 3 (9).

The grounds of the plaintiff's cause of action in this case are entirely different from those asserted in *Herbits* v. *Constitution Indemnity Co.* 279 Mass. 539, and in *Tauro* v. *General Accident Fire & Life Assurance Corp. Ltd.* 297 Mass. 234, and those cases are not controlling here.

The final decree as entered gives the plaintiff, in sub-

stance, the relief to which he is entitled.   No objection has been made to its form.   The defendants Vangel have not appealed.   The decree should not, however, have established a lien under G. L. (Ter. Ed.) c. 221, § 50, for the full amount of the plaintiff's counsel fees, and in view of the other relief granted it seems unnecessary to establish in this decree a lien merely for the taxable costs in the action at law.   The decree should therefore be modified by omitting paragraphs numbered 6, 7, and 8.   It should also be modified by adding a clause dismissing the counterclaim of Pandeli John against the plaintiff.   A purported counterclaim of Demetri John against Pandeli John, appearing only in a second purported "answer" filed late and apparently never allowed by the court, need receive no attention.   An appeal by Demetri John from the overruling of his demurrer to the original bill has been rendered immaterial by the allowance of the plaintiff's motion to file the substitute bill and is deemed to have been waived.   All other interlocutory decrees appealed from are affirmed.   The final decree, as modified, is affirmed with costs.

*Ordered accordingly.*