HENRY GARFIELD & another *vs.* ETHEL L. GARFIELD & another.

Barnstable. March 7, 1951. — June 28, 1951.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Laches. Equity Jurisdiction,* Laches.

A suit in equity, to compel a conveyance to the plaintiffs of an undivided interest in real estate which through error had been conveyed to a predecessor of the defendants more than forty years before the commencement of the suit, was barred by laches, whether or not such error was due to fraud, where it appeared that the plaintiffs themselves, with full knowledge of all the relevant facts, had delayed bringing the suit for twenty-seven years after they succeeded to the alleged rights asserted therein and that the delay was prejudicial to the defendants because of the deaths of witnesses, impossibility through the lapse of time of determining whether adjustments had been made "to take care of" such error, and the fact that the plaintiffs had stood by while improvements were made on the property.

BILL IN EQUITY, filed in the Superior Court on October 14, 1947.

The suit was heard by *Brogna,* J., on a master's report.

In this court the case was submitted on briefs.

*M. J. Murphy & H. C. Gill,* for the plaintiffs.

*W. J. Holbrook,* for the defendant Garfield.

*P. M. Swift,* for the defendant Buckley.

SPALDING, J. By this bill brought in 1947 the plaintiffs seek to establish a trust in and to compel a conveyance to

themselves of an undivided one-quarter interest in certain land in West Dennis of which they claim to have been• deprived due to the alleged fraud in 1903 of Lyman F. Garfield, deceased father of the defendant Helen P. Buckley and husband of the defendant Ethel L. Garfield. The defendants severally filed answers pleading laches but not the statute of limitations. The case was referred to a master under the usual rule. Rule 86 of the Superior Court (1932). The plaintiffs have appealed from the interlocutory decree overruling their exceptions to the master's report,[1] denying their motion to recommit the report for further hearing, and confirming the report, and from the final decree dismissing their bill.

The following is a summary of the pertinent findings of the master. In 1903 Henry E. Garfield, father of the plaintiffs, was the owner of an undivided one-quarter interest in a parcel of land in West Dennis. The record title to this interest was in a straw named Gill, a brother-in-law of the brothers Henry E. and Lyman F. Garfield. As Gill was desirous of ridding himself of the title, he and Henry engaged Lyman, an attorney and himself a beneficial owner of an undivided one-quarter interest in the property, to prepare a deed running to Stella F. Garfield, first wife of Henry E. Garfield and mother of the plaintiffs. A deed was prepared under Lyman's direction, but due to an error on his part, the grantee named in the deed was Ella O. Garfield, second wife of Lyman. The deed, which was without actual consideration, was executed and acknowledged by Gill. Gill's wife noticed the mistake before releasing her dower rights, and demurred. She signed the deed, however, on Lyman's promise "that it would be taken care of and that the name would be changed to Stella F. Garfield." The deed was recorded, and nothing has ever been done by way of changing the grantee's name. These facts were known to the Garfield brothers and particularly

---

[1] The interlocutory decree makes no specific reference to the exceptions to the master's report, but they were impliedly overruled by the confirmation of the report. *Joyner* v. *Lenox Savings Bank,* 322 Mass. 46, 58.

to Henry E. and Stella F. Garfield from the time of the
execution of the deed. Stella died in 1918 and Henry died
in 1920. For some time prior to Henry's and Stella's deaths
these facts were known to the plaintiffs, who appear to
have succeeded to whatever interests their parents may
have had in the property.

Henry, Lyman, and George, another brother who was
also a beneficial owner of an undivided one-quarter interest
in the property, were associated in various business enter-
prises and had many dealings back and forth among them-
selves. In 1901 Henry had become indebted to Lyman on
interest-bearing notes in the aggregate sum of $4,000 matur-
ing in one year, but there was no evidence before the master
as to whether the notes, or any part of them, were ever
paid. In 1908 Henry was adjudicated a bankrupt on his
voluntary petition. Although Lyman acted as attorney
for Henry in those proceedings, Lyman was not listed as a
creditor. Nor did Henry's schedule of assets include any
ownership in real estate, although this omission might be
explained by the fact that Henry's wife Stella was to have
been the grantee in the Gill deed rather than Henry himself.
The master states, "I find that the deed from Gill to Ella O.
Garfield was in error and should have been to Stella F.
Garfield, the wife of Henry, but it is impossible at this late
date to determine whether or not adjustments were made
between Lyman and Henry in their various business rela-
tionships to take care of this error. For example, Lyman
and his daughter, Helen P. Buckley, and his wife[1] often
visited Henry at Dennis after the date of this deed and their
relationships were pleasant. During this time (from 1903
almost to the date of Henry's death) Henry corresponded
with Lyman about other business affairs in which they were
involved and made no mention" of the property in question.

Lyman was requested on several occasions to "correct
the deed," so that the record ownership would be in Stella

---

[1] Helen P. Buckley is one of the defendants. It is uncertain whether the
"wife" referred to is Lyman's second wife, Ella, or his third wife, one of the
defendants.

Garfield *v.* Garfield.

Garfield, but he did nothing about it. At the time of Henry's death in 1920 his son Henry (who was called Harry and, to avoid confusion, will hereinafter be referred to as such), one of the plaintiffs, requested the change to be made, and Lyman absolutely refused to make the correction. This resulted in an altercation between them and Harry never spoke to Lyman again, although he corresponded with him until as late as 1940 about other matters without making any comment about the property. Until the present bill was brought no demand had been made to correct the deed since about 1920.

From 1895 until 1928 the property was "assessed to Garfield brothers" and the taxes were "paid by the parties in interest according to their ownerships." From 1928 until 1947 the taxes were paid by Lyman or his estate. During the period from 1936 through 1937 Lyman constructed four houses on the property at a total cost in excess of $10,600. He rented them from the time they were built and paid all the charges of construction, improvement and repairs. The plaintiffs knew all these facts and "have made no offer in their bill . . . to reimburse the defendants for any part of said construction, expenses and/or repairs and maintenance."

Ella O. Garfield (Lyman's second wife and the grantee named in the deed) is dead, but it does not appear when she died. Lyman died in 1946. Surviving him were a daughter and a third wife, Ethel, the defendants here. In 1947 the plaintiffs brought the present bill to recover the property.

There was no error in overruling the exceptions to the master's report. One of the exceptions challenged certain findings on the ground that they were not supported by the evidence. But in order to raise such a question, the objecting party must bring himself within the provisions of the second sentence of the second paragraph of Rule 90 of the Superior Court (1932). *Bouchard* v. *Bouchard,* 313 Mass. 531. *Buckley* v. *John,* 314 Mass. 719, 724. The plaintiffs have not shown compliance with those provisions. The

remaining exceptions require little discussion. It is elementary that exceptions must be founded on errors shown by the face of the report itself. *Minot* v. *Minot*, 319 Mass. 253, 258–259. Suffice it to say, without setting forth these exceptions, that they do not demonstrate such errors.

There was no error in denying the plaintiffs' motion to recommit the report for additional findings. The granting or denial of such a motion rested in the sound discretion of the judge. *Patterson* v. *Simonds*, 324 Mass. 344, 351.

The master found that the plaintiffs were precluded from recovering any interest in the property in question because of laches. He stated that this conclusion rested not only on the fact that "Henry E. Garfield and Stella F. Garfield . . . [did] nothing to rectify the error during their lives" but also on the fact "that the plaintiffs in this suit have done nothing to rectify it even though approximately forty-five years elapsed from the making and recording of the aforesaid deed during all of which time their parents and themselves were fully cognizant of all of the facts concerning it." Since the master based this conclusion solely on his subsidiary findings, the question whether the conclusion is correct is open on appeal. *MacLeod* v. *Davis*, 290 Mass. 335, 338–339. *Holmes* v. *Johnson*, 324 Mass. 450, 453. We are of opinion that the subsidiary findings amply justify the ultimate finding.

The final decree dismissing the bill was right. The plaintiffs argue in effect that the subsidiary findings of the master required an ultimate finding that Ella's name was inserted in the deed by fraud on the part of Lyman and that his subsequent conduct with respect to the deed was fraudulent. It is further argued that because of such fraud Ella, and subsequently Lyman and those deriving their title from him, held the property as constructive trustees. We do not pause to consider the correctness of these contentions, for whether there was fraud on the part of Lyman which gave rise to a constructive trust, or whether, as the master found, Lyman's conduct was not fraudulent, the result would be the same. In either case the master's finding with respect

Garfield *v.* Garfield.

to laches would preclude recovery. See Scott on Trusts, § 481.1; Restatement: Restitution, §§ 148, 179.

It may well be that the delay on the part of Stella and Henry E. Garfield from whom the plaintiffs' rights are derived should be charged to the plaintiffs. See *Hermanns* v. *Fanning*, 151 Mass. 1, 5; *Fennyery* v. *Ransom*, 170 Mass. 303, 307. But we need not decide that question, for the plaintiffs were guilty of laches on their own conduct. They were aware of all of the relevant facts at least as early as 1920. They knew at that time what Lyman's position was concerning the property. Nevertheless they took no steps to assert their rights until they brought this bill twenty-seven years later. Of course, as we have said many times, mere delay does not constitute laches; there must be delay which works disadvantage to another. *Moseley* v. *Briggs Realty Co.* 320 Mass. 278, 283, and cases cited. The plaintiffs' inordinate delay of more than a quarter of a century was clearly prejudicial to the defendants. Virtually all of the witnesses who could have shed any light on the original transaction in 1903 or on the subsequent relations between Henry E. Garfield and Lyman have died. As indicated above, the master because of the lapse of time was unable to "determine whether or not adjustments were made between Lyman and Henry in their various business relationships to take care of . . . [the] error" concerning the property. Moreover the plaintiffs have stood by while substantial improvements have been made on the property. The enforcement of the plaintiffs' claim in these circumstances would be inequitable. *Chandler* v. *Lally*, 308 Mass. 41, 45.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*