WILLIAM C. WIGGLESWORTH & others, trustees,[1] vs.
HOWARD J. COWLES & others.[2]

No. 93-P-765.

Essex. May 10, 1994. - April 24, 1995.

Present: BROWN, JACOBS, & PORADA, JJ.

*Trust*, Construction, Charitable trust, Trustee's authority, Trustee's discretion, Beneficiary. *Charity*.

A Probate Court judge correctly allowed a petition under G. L. c. 204, § 24, filed by trustees under a will seeking ratification of the acts of predecessor trustees in conveying trust assets to a charitable corporation under the trustees' exclusive control that was not a mirror image of the trust, where, given the trustees' fiduciary obligation at the time, a court of competent jurisdiction would have then determined, on proper proceedings, that the interests of the heirs under the will were protected and would have authorized the conveyance. [425-428]

Under the terms of a will and codicils creating a testamentary trust to establish and operate a convalescent home, the actions of the trustees in razing certain buildings on the trust property to achieve the trust purposes was properly ratified by a judge on the petition of the trustees under G. L. c. 204, § 24. [428-430]

Heirs under a will, fairly chargeable with the knowledge that the actions of trustees of a trust created under the will could be acting inappropriately with respect to the trust assets, were barred by laches from maintaining an action asserting their rights under the will where they waited over twenty-five years to challenge the trustees conduct and where it would be inequitable to third parties to allow the claim to proceed. [430-432]

---

[1] The other two plaintiffs are James M. Barney and Lawrence J. Pszenny. The plaintiffs are the successor trustees of the trust established under the will of Roxana C. Cowles.

[2] Mary Jane Cowles-Laskin; Cynthia Olansky; Henry T. Cowles, III; and two individuals named John P. Cowles. The Attorney General was joined pursuant to G. L. c. 12, §§ 8, 8G, and G. L. c. 206, § 24, and has assented to the petition in this case.

PETITION filed in the Essex Division of the Probate and Family Court Department on July 8, 1987.

The case was heard by *Thaddeus Buczko*, J., on a statement of agreed facts.

*Arthur K. Ross, Jr.* (*Peter M. Ross* with him) for Howard J. Cowles & others.

*Johanna Soris*, Assistant Attorney General, for the Attorney General.

*Celeste Niarchos* for the plaintiffs.

JACOBS, J. The plaintiff trustees under the will of Roxana C. Cowles petitioned the Probate Court in 1987, pursuant to G. L. c. 204, § 24, essentially seeking ratification of two acts of predecessor trustees which took place between 1957 and 1961 — the conveyance to a G. L. c. 180 corporation of land held in trust and the razing of certain structures located on that land.[3] The defendant heirs of Roxana C. Cowles appeal from a decree of ratification. We affirm.

We take the pertinent facts from the agreed statement of the trustees and heirs and the exhibits filed with the Probate Court. Roxana C. Cowles died in 1921. Among the provisions in her will and three codicils admitted to probate that year is a devise of her dwelling house and the lot upon which it stood on Green Street in Ipswich to three named persons "in trust . . . to use the same for a Convalescent Home, to be called the Stephen Caldwell Memorial Home." The will provides that "[s]aid house and land shall not be sold, and if used for any other purpose than a convalescent home, said house and land shall revert to my heirs." Cowles also devised two other houses and lots located within the same block as

---

[3]General Laws c. 204, § 24, provides in pertinent part: "If the authority or validity of an act or proceeding of . . . [a] trustee is drawn in question by reason of an alleged irregularity . . . or want of authority, any party interested . . . may apply to the probate court . . . and the court . . . may hear and determine the matter and confirm the act or proceeding, . . . but no act or proceeding shall be ratified or confirmed which the court might not have passed or authorized in the first instance upon due proceedings."

The trustees also requested and received court approval pursuant to G. L. c. 204, § 25, of their ratification of the accounts of three of their irregularly appointed predecessors. That approval is not contested before us.

the Green Street property, in trust, "for use in connection with the Stephen Caldwell Convalescent Home. . . ." One house and lot was located at the corner of Green and County Streets; the other was on Summer Street. Each of these devises specifies that "[s]aid house and land shall not be sold, but the income may be allowed to accumulate till such time as my house . . . in Green Street" shall come into the trustees' care following the life estates to which the Green Street property was subject. The will also places certain personal property in trust to be used for the support and maintenance of the convalescent home.[4] The residuary clause of the will, in addition to placing property in trust to be used to support and maintain the contemplated convalescent home, provides that if "any bequest of property, either real or personal, made in this will, shall be used for any purpose other than that for which said property is given in this will, then said property . . . shall revert to my heirs." Several of the bequests and devises in trust were made subject to life estates benefiting named relatives of Roxana C. Cowles. The will provides that "[t]he board of trustees shall be self-electing" and that the remaining trustees shall fill vacancies in their ranks.

The trustees' efforts to use the devised properties for a convalescent home awaited the written renunciation in 1956 of the last of two life estates to which the Green Street property was subject. Until that time, the income of the trust was accumulated. In 1957, following the written approval of the Attorney General, the trustees applied for and received a charter under G. L. c. 180 for a charitable corporation to be known as the Stephen Caldwell Memorial Convalescent Home, Inc. The stated purpose of the corporation was "[t]o establish, support, maintain, and operate a charitable convalescent home . . . in conformity with the will of Roxana C.

---

[4]That personal property apparently has remained in the testamentary trust throughout. A trust inventory filed with the Probate Court in 1930 reflected personal property valued at $116,238.32. The parties stipulated that as of December 31, 1986, "the trustees under the Will possessed marketable securities and cash with a book value of $321,045, and a market value of $405,590.00."

Cowles . . . and in general to exercise any and all powers which a corporation organized under [G. L. c. 180] may legally do, not inconsistent with the terms of said will." The by-laws of the corporation vest full control of its property and affairs in a board of trustees, the members of which are limited to the trustees from time to time appointed under the will of Roxana C. Cowles.

By a deed dated June 24, 1957, the trustees under the will conveyed the three parcels of real estate devised to them to the corporation. No pecuniary consideration accompanied this conveyance. Although the deed recited that the conveyance was made under the powers contained in the will and codicils, no such specific powers are contained in those documents. The conveyance to the corporation was approved, however, by the Attorney General in response to an application that indicated that it was the intention of the trustees to convey all of the real estate held by them to the corporation in order to qualify for certain tax benefits.

In 1957, the petitioners as trustees of the corporation authorized the demolition of the dwelling house at the corner of Green and County Streets. The house was then being rented, but unprofitably. A dissolution petition, filed in 1970 by the trustees,[5] indicates the demolition had been undertaken "because the cost of maintaining [the house] far exceeded the income which could be derived from it." In 1957, they also authorized the demolition of the house on Green Street be-

---

[5]The statement of agreed facts contains the following: "On September 8, 1970, the trustees under the Will petitioned the Essex Probate Court for authority to dissolve the Corporation and transfer all assets of the Corporation and the trust under the Will to Ipswich Hospital without reversion to the heirs of Roxana C. Cowles. The court's Citation was properly served to interested parties. A Guardian ad Litem was appointed by the Court and filed his report with the Court. The Office of the Attorney General filed [a]n agreement with the Petition. On February 4, 1972, the Court issued its decree for the authority sought by the Petition. Despite the authority, the contemplated transfer did not occur."

The trustees and the Attorney General argue that the heirs are collaterally estopped by this decree from asserting any rights under the reverter clause. In light of our affirmance on other grounds, we need not address this contention.

cause according to the same petition "it was discovered in the course of construction of alterations and additions . . . that [its] condition . . . would not permit its use [as a convalescent home] under prevailing standards . . . of the Commonwealth of Massachusetts . . . ." The corporation's records indicate that a substantial part of this demolition was approved by the Attorney General.

In 1959, the Stephen Caldwell Memorial Convalescent Home was opened on the Green Street site with a capacity of twenty-one beds. The trustees at that time applied the income of the trust to the operating expenses of the corporation. Thereafter, the corporation authorized the demolition of the dwelling house on Summer Street for the purpose, according to the corporation's records, of providing access to the rear of the convalescent home. It also had been unprofitably rented. By 1962, all three homes had been razed. Neither the corporation nor the trustees under the will sought the authority of the Probate Court prior to the razing of the three structures.

In 1961, the purpose of the corporation was amended, deleting any reference to the will of Roxana C. Cowles and providing that, upon termination of the corporation, its net assets shall, "unless otherwise directed by law, be given only to any one or more states or municipalities of the United States or to any one or more nonprofit charitable corporations incorporated therein as a majority of the members of the corporation shall determine and no . . . person . . . shall by virtue of such liquidation ever receive or be entitled to any of the assets of the Corporation." No change was made in the governance of the corporation, which remained under the sole control of the trustees under the will. The stated primary purpose of operating a charitable convalescent home under the name of the Stephen Caldwell Memorial Convalescent Home was reiterated in the amendment. The amendment was enacted in order to obtain the tax exemption benefits of Section 501(c) (3) of the Internal Revenue Code.

In 1964 and 1986, the corporation added to the original convalescent home so that it now contains sixty beds. It

maintains a hundred percent occupancy rate, has a substantial waiting list, and is Medicare and Medicaid approved, providing both intermediate and skilled nursing home care. The stipulation of the parties indicates that the convalescent home "presently uses land originally owned as six parcels, two of which were devised under the Will, three of which were purchased by the Corporation and one which was purchased by the trustees under the Will." The parcel at Green and County Streets is a small, unbuildable lot which is not contiguous to the other property presently used by the convalescent home. There is no indication in the record that the convalescent home derives any benefit or income from this parcel although the heirs admit in their answer that the convalescent home "occupied" each of the three devised parcels.

Our review is limited to the propriety of the ratification and confirmation of the trustees' execution of the deed dated June 24, 1957, and their authorization of the razing of the structures on the conveyed real estate.[6]

1. *The conveyance to the corporation.* The heirs object to the administration of the trust by the corporation, claiming that the conveyance to the corporation does not preserve their interest, especially after the 1961 amendment of the corporate purpose. They argue that upon termination of the existence of the convalescent home the amendment requires that the assets of the corporation be distributed, not to them as dictated by the will, but to a governmental entity or another nonprofit corporation. They claim that the corporation is not a "mirror image" of the trust and that ratification of the conveyance to the corporation effectively approves a "private" cy pres and defeats the interest of the heirs and the objectives of the will. The heirs suggest that the assets of the

---

[6]The heirs in their brief allude to the filing by the trustees of complaints for cy pres and adoption of accounts. They note that the former was dismissed by stipulation and that the latter are pending and awaiting decision in this case. The record appendix indicates a guardian ad litem filed a report "object[ing] to the accounts as rendered" and leaving the trustees to their proof. His report covered the second through twenty-ninth accounts of various persons acting as trustees. Our decision does not adjudicate the issues raised in that report.

corporation (essentially the land and building comprising the convalescent home) should be conveyed to the trust and that the noncontiguous parcel at Green and County Streets be conveyed to them.

The controlling standard is that "no act or proceeding shall be ratified or confirmed which the court might not have passed, or authorized in the first instance upon due proceedings." G. L. c. 204, § 24, The guiding principle, in the circumstances, is that forfeiture of a charitable trust based upon inappropriate administration of the trustees is to be avoided, particularly where forfeiture would accrue to the benefit of the heirs of the testator. *Davenport* v. *Attorney Gen.*, 361 Mass. 372, 378 (1972). See also Restatement (Second) of Trusts § 401(1) comments a & e (1959).

Whether trustees, without legislative or court authority or express direction contained in the trust provisions, may turn over to a charitable corporation assets held by them essentially for charitable purposes has not been definitely decided. See *Shattuck* v. *Wood Memorial Home, Inc.*, 319 Mass. 444, 451-452 (1946); Newhall, Settlement of Estates § 430, at 85 n.3 (4th ed. 1958 & Supp. 1994). We need not reach the issue here for the heirs do not contest the propriety of the transfer of assets to a charitable corporation generally[7] but merely claim that the dissolution provision, particularly after the amendment of the corporation's purpose clause in 1961, prevented it from being a mirror image of the trust.

Given the continuing exclusive control of the corporation by the trustees and their fiduciary obligation, at the time of the deed to the corporation, to operate a convalescent home conformably with the terms of the will of Roxana C. Cowles, we believe that a court of competent jurisdiction, upon proper proceedings in 1957, would have determined that the interests of the heirs under that will adequately were pro-

---

[7]While the heirs indirectly assert that the conveyance violates the testamentary prohibition against sale of the houses, they advance no substantive argument in support of that notion. In any event, we do not view the transfer of title by the trustees, without pecuniary consideration, to a corporation solely governed by them, as a sale. See *Fisher* v. *Fisher*, 23 Mass. App. Ct. 205, 206 (1986).

tected and would have authorized the conveyance in question.

Even when viewed in the circumstances obtaining at the time of the amendment of the corporation's purpose clause in 1961, we discern no destruction of the heirs' interest. Although the amendment contains no reference to the provisions of the will, it retains, as the corporate purpose, the testator's primary objective of operating a charitable convalescent home under the name of the "Stephen Caldwell Memorial Convalescent Home." Dissolution of a charitable corporation at that time was governed not by G. L. c. 180, § 11A, which was inserted by St. 1962, c. 472, but by G. L. c. 155, § 50, which, in 1961, would have permitted voluntary dissolution of the corporation upon petition of the trustees. See Fremont-Smith, Foundations and Government 306-307 (1965). In the event of such a petition, the trustees, having a fiduciary relationship to the heirs, would have had a duty to seek a court order that would protect the heirs' interests. See *Briggs* v. *Crowley*, 352 Mass. 194, 200-201 (1967); *Harrison* v. *Marcus*, 396 Mass. 424, 429 n.11 (1985). The court, in turn, would be obliged to look through the corporate form in order to satisfy the testator's direction in the event of failure of the will's charitable provisions. *Boston* v. *Curley*, 276 Mass. 549, 558 (1931). Accordingly, a decree distributing the assets to the heirs upon dissolution would have been consonant with the terms of the 1961 amendment, which permitted avoidance of the requirement that the assets be distributed to a governmental entity or a nonprofit charitable corporation if "otherwise directed by law."

Relying on the enactment, in 1962, of G. L. c. 180, § 11A, subsequent to both the conveyance and the corporate amendment in question, the heirs argue that the corporation is fundamentally different from the trust because, in the event of liquidation, corporate assets must be distributed in accordance with the provisions of that statute and not to the heirs.[8] This development in the law neither prevents ratifica-

---

[8]General Laws c. 180, § 11A, as amended by St. 1971, c. 819, § 5, provides: "A charitable corporation constituting a public charity organized

tion of the 1957 conveyance nor requires a determination that the trust provisions have been dishonored. The argument relies on an assumption of the occurrence of an unpredictable event in the indefinite future. It ignores that the testator's primary charitable objective — the operation of a convalescent home — continues to be met more than seventy years after her death and assumes that both the corporate charter and the statutory dissolution provisions will remain unchanged at that indefinite future time when a dissolution may occur. It also wrongly assumes the heirs' interests, to the extent they survive into the indefinite future, will not be protected by the trustees and the courts. See *Harrison* v. *Marcus*, 396 Mass. at 432 ("A statute cannot extinguish the terms of a trust").[9]

2. *Razing of structures.* The heirs claim that the terms of Roxana Cowles's will require that land and houses devised to the trustees be used as a convalescent home and returned to the testator's heirs when they cease to be so utilized. They claim that the razing of the homes was not authorized by the

under the provisions of general or special law, which desires to close its affairs may, by vote of a majority of its board of directors, authorize a petition for its dissolution to be filed in the supreme judicial court setting forth in substance the grounds of the application for dissolution and requesting the court to authorize the administration of its funds for such similar public charitable purposes as the court may determine. The provisions of this section shall constitute the sole method for the voluntary dissolution of any such charitable corporation."

[9]In light of our decision, we do not consider the Attorney General's contention that the heirs' claims are barred by operation of G. L. c. 260, § 31A, applicable to rights of entry for condition broken and possibilities of reverter created prior to January 2, 1955. In any event, if we were to assume that a defeasible fee subject to that statute was acquired by the trust, see *Selectmen of Provincetown* v. *Attorney Gen.*, 15 Mass. App. Ct. 639, 644-645 (1983), and authorities cited, the trustees may have been under a fiduciary duty to protect the heirs by properly registering their reversionary interests pursuant to G. L. c. 260, § 31A(*b*). See *Harrison* v. *Marcus, supra* at 429 n.11. We also do not address the possible applicability of the rule against perpetuities, which was not raised here. Compare *Harrison* v. *Marcus, supra* at 431 n.13, with 4A Scott on Trusts § 401.2 (4th ed. 1989). See also *Brown* v. *Independent Baptist Church*, 325 Mass. 645, 647-648 (1950).

testator and, therefore, could not be ratified under G. L. c. 204, § 24.

A fair reading of her will and codicils indicates that Roxana C. Cowles's primary testamentary purpose was the establishment and operation of a convalescent home memorializing Stephen Caldwell. The means and methods for accomplishing that objective are secondary in nature and constitute subordinate provisions of the testamentary trust. It is well established that trustees reasonably may deviate from such subordinate provisions in order to achieve the testator's dominant purpose and to avoid a forfeiture of the trust. See *Trustees of Dartmouth College* v. *Quincy*, 357 Mass. 521, 531 (1970); Restatement (Second) of Trusts §§ 167 & 381; 2A, 4A Scott on Trusts §§ 167 & 381 (4th ed. 1988, 1989); Bogert, Trusts and Trustees § 396 (2d ed. 1977). Authorizing sensible changes in the prescribed, but no longer appropriate, mechanics of achieving a testator's primary charitable objective is within "the general power of courts of equity in the administration of charitable trusts to permit deviation short of cy pres applications." *Trustees of Dartmouth College* v. *Quincy*, *supra* at 531. The inapplicability of the cy pres doctrine to the testamentary trust here involved due to the existence of the reversionary provisions of the will, see Restatement (Second) of Trusts § 399 comment c, should not prevent reasonable deviation from the trust's subordinate provisions for the purpose of serving the testator's principal charitable objective. See *Union Congregational Soc.* v. *South Shore Natl. Bank*, 342 Mass. 41, 45 (1961).

It is apparent from the record that, when the Green Street structure became available for use as a convalescent home approximately thirty-five years after the death of Roxana Cowles, governmental requirements had rendered it unsuitable for that purpose and that the other two devised houses, rather than providing financial support for the convalescent home as contemplated by the testator, had become financial liabilities. The testamentary documents do not require these other houses to be rented or that the income produced by them be accumulated beyond the time that the Green Street

property began to be used as a convalescent home. Moreover, the absence of express directions or trustee powers with respect to the implementation of the testator's principal purpose weighs against the conclusion that the houses were required to be maintained beyond the time that the devised real property became available for use as a convalescent home.

3. *Equitable considerations.* Pervading this proceeding is the silence of the heirs for over twenty-five years. The actions now brought into question occurred between 1957 and 1961. There is no indication before us that any heir claimed any impropriety or repudiation of the trust on the trustees' part until the heirs filed their answer in this case in 1987.

Although not set up in the pleadings, the issue of laches was argued to the judge. The heirs now maintain that laches is an affirmative defense and is not available to the trustees because they brought this action. Notwithstanding that laches may not be asserted as matter of right unless raised in the pleadings, "it is always open to a court of equity in its discretion to do what justice and fair dealing require as to delay in making claims." *North Easton Co-Op. Bank* v. *MacLean,* 300 Mass. 285, 294 (1938), quoting from *Raytheon Mfg. Co.* v. *Radio Corp.,* 286 Mass. 84, 101 (1934). Even had we concluded that the trustees' actions between 1957 and 1961 constituted repudiations of their trust, we would not permit the heirs, in the circumstances, to object to ratification after such protracted delay in asserting their claimed rights.

The general rule is that "[a] beneficiary does not lose his interest in the trust property merely because of a lapse of time, however great . . . . But if the trustee repudiates the trust to the knowledge of the beneficiary and the beneficiary fails to take proceedings against him for a long period, the beneficiary may be barred by laches from enforcing the trust." 3 Scott on Trusts § 219.1, at 365-366 (4th ed. 1988). See *Chandler* v. *Lally,* 308 Mass. 41, 44-45 (1941). The heirs fairly are chargeable with knowledge of such an obvious occurrence as the demolition of a home on trust property.

It also may be inferred that the then next of kin of Roxana C. Cowles, her niece and nephew, were aware of the impending demolition of the house and the construction of the nursing home on the Green Street site: they renounced their interests in that property in 1955 and 1956, and they received invitations both to the opening ceremonies of the convalescent home in 1959 and the ceremonies attendant to the 1964 addition. Moreover, the nephew was a speaker at the first meeting of the convalescent home auxiliary and reasonably may be charged with knowledge that the convalescent home was located on the former site of the Green Street house.

Knowledge since 1970, on the part of the heirs, of the corporation's amended purpose clause and the razing of the devised houses also may be inferred from the trustees' petition to the Probate Court in that year for authority to dissolve the corporation and transfer its assets to another institution without reversion to the heirs. See note 5, *supra.* The petition set forth the entire amended purpose clause of the corporation, described the circumstances of the demolition of the three devised houses, and referred to the nephew of Roxana C. Cowles, who was then living in Ipswich, as her sole surviving heir. Notice of the petition was served on all interested parties, including the nephew, and published in a local paper. There is no indication in the record that the nephew suffered from any disability, and the heirs (the nephew's descendants) have indicated in their brief that he confessed judgment. Accordingly, the then sole heir was chargeable with knowledge of the matters in issue no later than the time of the service of the petition in 1971. His descendants, the present defendants, also may be chargeable with such knowledge. See *Garfield* v. *Garfield,* 327 Mass. 529, 534 (1951).

The heirs claim that the acts of the trustees, at the very least, require that the real estate conveyed to the corporation be returned to the trust. Intrinsic to any equitable barring of that claim on the grounds of delay on the part of the heirs is the requirement that there be disadvantage to another flowing from that untimeliness. *Garfield* v. *Garfield, supra. Myers* v. *Salin,* 13 Mass. App. Ct. 127, 138 (1982). Here, dis-

advantage is inherent in the circumstances. Much of the past funding of the convalescent home, both private and public,[10] has been conditioned on the existence of the corporation and its tax-exempt status. It is not unreasonable to infer that return of the real estate to the trust might jeopardize future funding.

Accordingly, the decree of ratification and confirmation is affirmed. The trustees' request for attorney's fees and costs is denied.

*So ordered.*

---

[10]In addition to anticipated tax advantages, the record indicates that the corporation was formed to obtain Federal funds and that Federal grants have been received during its existence, together with substantial private donations from the community.