## MARY JAYNE SANTAGATE *vs.* LEO DAVID TOWER.

No. 03-P-1593.

Essex. September 20, 2004. – August 25, 2005.

Present: GELINAS, SMITH, & COWIN, JJ.

*Parent and Child,* Child support. *Divorce and Separation,* Child support, Relief from judgment. *Judgment,* Relief from judgment. *Probate Court,* Judgment, General equity power. *Restitution. Unjust Enrichment. Laches.*

This court found no abuse of discretion in a probate judge's denial of a mother's claim under Mass.R.Dom.Rel.P. 60(b)(6) to modify a judgment of divorce in order to establish a support order, where the mother's twenty-nine year delay in bringing the action exceeded the "reasonable time" requirement outlined by the rule, and where the weight of the evidence supported the judge's decision not to credit the mother's alleged reasons for the delay [326-327]; however, the judge erred in dismissing the mother's claim for equitable restitution from the father for amounts she paid in support of their children during their minority, where the father unquestionably had a duty to support his minor children after the separation and divorce, and his failure to do so resulted in the mother's having to expend additional funds of her own in the support of the children [327-333]; further, the father could not claim laches as an equitable defense to the mother's restitution claim, where he presented no evidence of prejudice arising from the mother's delay in bringing the action, and where his own conduct (i.e., abandoning his children and failing to provide for their welfare) resulted in unclean hands [333-335].

Discussion of the measure of recovery to be awarded to a mother on her claim against the father for restitution of amounts actually expended by the mother in the support of their children. [335-336]

COMPLAINT filed in the Essex Division of the Probate and Family Court Department on April 30, 2001.

The case was heard by *Mary Ann Sahagian,* J.

*John S. Legasey* for the plaintiff.

*James D. Takacs* for the defendant.

GELINAS, J. We consider in this appeal whether a judge in the Probate and Family Court abused her discretion in denying the

mother's two claims: (1) a claim under Mass.R.Dom.Rel.P. 60(b)(6) (1975) to modify a divorce decree, and (2) a claim for equitable restitution from the father for amounts she paid in support of their children during their minority. We affirm in part and reverse in part.

The uncontested facts presented at trial are these: Mary Jayne Santagate (mother) and Leo David Tower (father) were married on June 13, 1964. Between 1965 and 1968, the couple had three children. In May, 1972, the father deserted the mother and the children, ages six, five, and four.

The father returned only once, several days after his departure, to take the children to the beach and to give a small amount of money to the mother. Following this visit, the father had no further contact with the mother or the children, until he was located some twenty-seven years later by a private investigator hired by his then adult children.

On June 8, 1972, within a few weeks of the abandonment, the mother filed a petition for separate support, together with a motion for temporary orders. The petition and motion were served upon the father by mail, at Gregory Island Road in Essex. The father did not attend the hearing, held on June 12, 1972, and the court ordered him to pay $175 per week in child support.

The mother filed a libel for divorce in August, 1972. The libel was amended in October, 1972, to substitute for the father's street address the words "now of parts unknown." Notice of the libel, as amended, was made by publication. On April 3, 1973, the court entered a decree of divorce nisi. The decree contained no order of support, as the court did not have personal service upon the father. At or around the time the mother filed her libel for divorce, she also filed a complaint for contempt, citing the father's failure to pay temporary support. Due to her inability to locate the father, this action terminated.

In late 1973, the mother married the attorney who represented her in her divorce. He died in 1977. She was briefly married again, for less than a year, in 1978, and married her current husband in 1983. The mother began working as a licensed nurse practitioner after the father left in 1972. She stopped working after her 1973 marriage, but returned to nursing after the death

of her second husband in 1977. She continued to work full time to support her children throughout her third and fourth marriages, providing housing, food, health insurance and education for them.

The mother initially attempted to locate the father through friends, neighbors, his past employers, and his colleagues. These attempts were unsuccessful. Although she initially had intermittent contact with the father's parents, that contact ended within a year of the couple's separation, and the mother was informed by her in-laws that the father was dead. At no point did the mother seek death benefits through the Social Security Administration on behalf of herself or the children.

After leaving his family, the father met Maureen Cusack in the summer of 1972. They were married in October, 1973. The father obtained a copy of the judgment of divorce absolute from the Probate Court prior to his marriage to Cusack. At that time, he informed her that he had three children from a previous marriage.

As noted, in 1999, the children, now well into majority, sought assistance from a private detective in locating the father. Within a short time, the detective located the father living in Dedham.

In April, 2001, the mother filed a complaint seeking relief on four separate counts: (1) equitable relief for the enforcement of a separate support order; (2) nunc pro tunc establishment of a support order pursuant Mass.R.Dom.Rel.P. 60(b)(6); (3) alimony and property assignment pursuant to G. L. c. 208, § 34; and (4) equitable relief in the form of restitution for her support of the children. Counts one and three were dismissed on the father's motion for summary judgment. Counts two and four proceeded to trial, subsequent to which the judge entered a judgment of dismissal on both counts, from which the mother now appeals. The mother claims that the trial judge erred in refusing to modify the thirty year old judgment of divorce on her rule 60(b)(6) claim, and in failing to enter an order for restitution.

*Denial of claim under rule 60(b)(6).* We will not reverse a judge's denial of a rule 60(b)(6) motion unless we find a clear abuse of discretion. See *Trustees of the Stigmatine Fathers, Inc.*

v. *Secretary of Admn. & Fin.*, 369 Mass. 562, 565 (1976). See also *Care & Protection of Georgette*, 439 Mass. 28, 33 n.6 (2003).

The weight of the evidence supports the judge's decision to deny the mother's claim under rule 60(b); the decision falls well within her discretion. The mother's case centers on her contention that the father actively hid from her and changed his identity, and that she believed he was dead. The judge did not credit the mother's testimony on these points, finding that the mother cut short her efforts to locate the father following her remarriage to her divorce attorney less than one year after the father's departure. The judge additionally found that the mother's actions did not support her claim that she believed the father was dead. Moreover, the twenty-nine-year delay in bringing the action, and the fact that the youngest child was emancipated approximately fifteen years before the action was initiated, further support the judge's determination that the delay in bringing the motion exceeds the "reasonable time" requirement outlined by the rule. See *Rezendes* v. *Rezendes*, 46 Mass. App. Ct. 438, 440 (1999) (determination of what constitutes reasonable time to bring rule 60[b] motion falls solely to discretion of trial judge). There was no error.

*Restitution.* The mother also claimed equitable relief, asking that father be ordered "to pay a fair share of the cost of caring [for] and maintaining the minor children during their minority." We read this as a claim for restitution, invoking the Probate and Family Court's general equity jurisdiction pursuant to G. L. c. 215, § 6.[1] The mother argues in effect that the father has been unjustly enriched at her expense by his failure to pay support for the children during the period prior to their emancipation. While we conclude that her claims for amounts to which she would have been entitled under the terminated support order, or under other possible orders of support in the divorce proceeding, must fail, we also hold that, insofar as her

---

[1]The first paragraph of G. L. c. 215, § 6, as amended by St. 1981, c. 616, provides in pertinent part: "The probate and family court department shall have original and concurrent jurisdiction with the supreme judicial court and the superior court department of all cases and matters of equity cognizable under the general principles of equity jurisprudence and, with reference thereto, shall be courts of general equity jurisdiction."

claim relates to reimbursement for amounts she expended, or at least some portion thereof, it has validity under general theories of restitution.

Under G. L. c. 215, § 6, as amended by St. 1981, c. 616, the Probate and Family Court is granted "original and concurrent jurisdiction with the supreme judicial court and the superior court department of all cases and matters of equity cognizable under the general principles of equity jurisprudence."[2] The equity powers of a probate judge are "broad and flexible, and extend to actions necessary to afford any relief in the best interests of a person under their jurisdiction." *Matter of Moe*, 385 Mass. 555, 561 (1982).

In her memorandum of decision, the judge recognized the ability of a probate judge, in certain circumstances, to award child support under these broad equity powers. See *Feinberg* v. *Diamant*, 378 Mass. 131, 136-137 (1979) (probate judge may order support for incompetent adult child through equity powers); *Taverna* v. *Pizzi*, 430 Mass. 882, 885 (2000) (probate judge may use equity power to provide for retroactive child support); *Doe* v. *Roe*, 23 Mass. App. Ct. 590, 595 (1987) (through its equity power, probate judge may order support for nonmarital child over age eighteen entitled to support); *Pearson* v. *Pearson*, 52 Mass. App. Ct. 156, 162 n.8 (2001) (noting use of equity power in *Feinberg* v. *Diamant, supra*). The judge, however, expressed reservations about ordering support in this case. First, she noted that the children had reached majority and would not benefit from the order. She also concluded that restitution could not be based on the support order, as the request seemed predicated on the original order of temporary support that was terminated, and that the father, in any event, would not have had to pay while the order was in force because of his financial circumstances. Finally, she concluded that, as the current child support guidelines were not in effect during the period when the father had a duty to support the children, the guidelines could not provide a basis for equitable relief. The trial judge also suggested that laches would apply, given the mother's lack of pursuit of the father, and the time that had

---

[2]The statute excludes from this jurisdiction cases in which injunctive relief is sought in a matter stemming from a labor dispute as defined by G. L. c. 149, § 20(c).

elapsed prior to her bringing the suit.

We think the judge's ruling places too severe a limitation on the general equity powers of a probate judge, and that, while she was correct in her denial of retroactive child support in this case, and in rejecting the suggested measures of what that support might be, the mother's claim was broad enough to encompass a claim of restitution for amounts that she had advanced for the support of the children. Prescinding from the question whether the broad language of G. L. c. 215, § 6, establishing equity power in a probate judge, except in matters of injunctive relief stemming from a labor dispute as defined by G. L. c. 149, § 20(*c*), was meant to confer additional jurisdiction to hear equity matters not related to the Probate and Family Court's traditional jurisdiction, we conclude that here, as the question arises out of the father and mother's relative obligations to support their children, the matter is well within the purview of the probate judge. Amounts retained by the father, to the extent that the mother provided his share of support, constituted unjust enrichment.

Unjust enrichment is defined as "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Taylor Woodrow Blitman Constr. Corp.* v. *Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982), quoting from 66 Am. Jur. 2d Restitution and Implied Contracts § 3 (1962). An equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law. See *ibid.*; *Popponesset Beach Assn.* v. *Marchillo*, 39 Mass. App. Ct. 586, 593 (1996). See also *Cecio Bros.* v. *Greenwich*, 156 Conn. 561, 564-565 (1968) ("right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed to examine the circumstances and the conduct of the parties and apply this standard" [quotations and citations omitted]).

"Restitution is an equitable remedy by which a person who

has been unjustly enriched at the expense of another is required to repay the injured party. . . . [It] is appropriate 'only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [one of them] to retain it.' " *Keller* v. *O'Brien*, 425 Mass. 774, 778-779 (1997), quoting from *National Shawmut Bank* v. *Fidelity Mut. Life Ins. Co.*, 318 Mass. 142, 146 (1945). Here, the mother has no legal remedy against the father for amounts she advanced to fulfil his obligation of support.

The Restatement of Restitution § 76 (1937) provides: "A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." Section 76, comment b, specifically recognizes a wife's right to restitution for payments of child support which a husband has the statutory duty to make. It states: "In State X a husband is under a duty to supply necessaries to his wife and minor children and a wife is entitled to maintain an action against her husband. A wrongfully refuses to supply necessaries for his wife and minor child. The wife secures a position and provides herself and the child with necessaries. She is entitled to reimbursement from her husband for the value of the necessaries." *Id.* at § 76 comment b, illus. 5. See Restatement of Restitution § 113 comment i (1937) ("Where the person who performs the duty is also under a duty to perform it, the rules stated in §§ 76-85 are applicable. Thus the mother of a child who has supported it in accordance with a statutory duty of support would be entitled to restitution from the father who was under the primary duty to support it").

Other jurisdictions have allowed an independent action by the wife, or others, to recover monies advanced to fulfil a husband's obligation of child support. See *Barrett* v. *Barrett*, 44 Ariz. 509, 519 (1934), quoting from *Van Valkinburgh* v. *Watson*, 13 Johns. 480, 480 (N.Y. Sup. 1816) (where oldest son, once emancipated, furnished necessities for his younger siblings for period of three years, as mother was invalid and unable to work, court ruled that son was entitled to recover from father, holding "[a] parent is under a natural obligation to furnish necessaries for his wife

and children; and if the parent neglect that duty, any other person who supplies such necessaries is deemed to have conferred a benefit on the delinquent parent, for which the law raises an implied promise to pay on the part of the parent"); *Anonymous Wife* v. *Anonymous Husband*, 153 Ariz. 573, 576 (1987) ("[N]atural parents are legally obligated to financially support their children. . . . If a natural parent abdicates his or her parental duties, and another individual financially supports the child, the law implies a promise by the irresponsible natural parent to reimburse the individual responsible for providing necessaries to the child"); *Rowell* v. *Rowell*, 97 Kan. 16, 20 (1916) (where wife brought action against ex-husband to recover maintenance of two minor children for period of six and one-half years, during which time she had sole care of children and no provision had been made for maintenance of children, "no reason . . . why the plaintiff might not maintain an independent action against the defendant for the recovery of the money already expended"); *Allen* v. *Allen*, 364 Mo. 955, 958 (1954) (husband's "former wife may maintain an independent action against him and recover a reasonable sum for her expenditures for necessary support furnished the child"); *Cole* v. *Estate of Armstrong*, 707 S.W.2d 459, 463 (Mo. App. 1986) (mother, "as the parent who furnished [the daughter's] necessaries during the years immediately preceding [the father's] death, was entitled at least to contribution, if not reimbursement, for her expenditures"); *Rogers* v. *Rogers*, 295 Pa. Super. 160, 163 (1982) (mother had cause of action for her past expenditures in support and maintenance of children of marriage "under common law theories of restitution and of quasi-contract").

A parent has a duty to support his or her minor children, a duty that in recent years has been enhanced. See *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 443-444 (2000) (tracing history of obligation of parent to support child, and outlining recent statutory changes enhancing that obligation). In considering how best to balance a parent's child support responsibilities with his obligation to make criminal restitutionary payments, a United States District Court judge noted the broad public interest in preventing parents from complete avoidance of their child sup-

port obligations. See *United States* v. *Golino*, 956 F. Supp. 359, 363 (E.D.N.Y. 1997). "[The court should exercise] latitude in considering the public's interests in child support obligations being met: family and community stability is encouraged, fewer young people are likely to be driven to crime as a result of broken and impoverished homes, and the government's fisc is not overburdened by providing aid to families that can be supported by other family members. Congress has long acknowledged these concerns and enacted legislation to aid and encourage states in the collection of child support. See, e.g., Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Title II, Pub. L. No. 104-193, §§ 301-375, 110 S[tat]. 2106 (overhauls federal and state child support systems, requiring use of new enforcement techniques to find noncustodial parents); Child Support Recovery Act of 1992, Pub. L. No. 102-521, 106 S[tat]. 3403 (codified at 18 U.S.C. § 228) (makes it a crime to willfully avoid a past due child support obligation while residing in different state from child); Social Service Amendments of 1974, Pub. L. No. 93-647, § 451, 88 S[tat]. 2337 (creating Title IV-D of Social Security Act; states must provide child support enforcement services free of charge to AFDC recipients)." *Ibid.*

In *Taverna* v. *Pizzi*, 430 Mass. at 885, a case involving a child conceived during a marriage, but born four days after a decree of divorce had become final, the court ruled that the trial judge had equity power, pursuant to G. L. c. 215, § 6, "if from no other source, to consider the child a legitimate child of the parties; to order the defendant to make ongoing weekly payments of child support for her; to determine, and order paid by the defendant, past child support; and to provide for payment with suitable security for the $50,000 amount computed as the past support owed." Without question, were the children unemancipated, or having attained majority with attendant circumstances requiring support, the probate judge could, "if from no other source," award support pursuant to the Probate and Family Court's general equity power. *Taverna* v. *Pizzi, supra.*

Here, the father unquestionably had a duty to support his minor children after the separation and divorce. It is not sufficient for him to argue that the mother was not assiduous in seeking him out to try to make him provide that support. He

was well aware of where the children resided, and could have easily found them and provided support had he chosen. The father argues, in effect, that any award pursuant to the equity power must necessarily rest in part on a finding that the award is in the best interests of the children. We think the argument misplaced. The mother does not seek modification of an existing order of support, where change of circumstance and the best interests of the children are necessary components of the judicial calculus. See G. L. c. 208, § 28; *Whitney* v. *Whitney*, 325 Mass. 28, 31 (1949); *Schuler* v. *Schuler*, 382 Mass. 366, 370 (1981). Rather, she seeks repayment of amounts that she expended in fulfilment of the father's support obligation. As the judge noted, the mother might have been required to seek periodic modification of any such support order. Such a conclusion, however, does not bear on the father's underlying obligation to provide support for his children, or the fact that his failure to so do resulted in the mother's having to expend additional funds of her own in the support of the children.

*Laches.* Citing to *G.E.B.* v. *S.R.W.*, 422 Mass. 158 (1996) and *O'Meara* v. *Doherty*, 53 Mass. App. Ct. 599 (2002), the judge further determined that "laches may apply to an action for past due or retroactive support, but only if there is proof that there has been unjustified, unreasonable and prejudicial delay in bringing the action."

A defense of laches exists upon a factual finding that there has been unjustified, unreasonable, and prejudicial delay in raising a claim. *Srebnick* v. *Lo-Law Transit Mgmt., Inc.*, 29 Mass. App. Ct. 45, 49 (1990). Here, the burden of proof with respect to laches rests with the father. *G.E.B.* v. *S.R.W.*, *supra* at 166. The father argues that the mother's delay in bringing the proceedings might well be characterized as unjustified and unreasonable, where she was less than assiduous in seeking to learn his whereabouts, especially given that he continued to reside in her area for a period of time, he never left the Commonwealth, he never attempted to conceal his name or address, he remarried, and he had children and purchased real estate.

The father, however, presented no evidence of prejudice, and the judge made no finding that the mother's delay operated to

the father's detriment. In order to successfully prevail on a defense of laches, more than mere delay is required. "Intrinsic to any equitable barring of [a] claim on the grounds of delay . . . is the requirement that there be disadvantage to another flowing from that untimeliness." *Wigglesworth* v. *Cowles*, 38 Mass. App. Ct. 420, 431 (1995). "Unreasonable delay in pressing a legal claim does not, as a matter of substantive law, constitute laches." *Srebnick* v. *Lo-Law Transit Mgmt., Inc.*, 29 Mass. App. Ct. at 49-50, citing *Cohen* v. *Bailly*, 266 Mass. 39, 48-49 (1929). See *Kenney* v. *Commissioner of Correction*, 399 Mass. 137, 139 (1987) (defense of laches unavailable without showing of prejudice to defendants as result of delay).

Moreover, the father does not approach the argument devoid of blame. He abandoned his wife and three children, remarried, established a new life and purchased real estate, making no attempt ever to see the children of his first marriage or to provide for their welfare. Having obtained a copy of his divorce decree prior to his second marriage, he had actual knowledge of the divorce. The father's abandonment was complete; he never attempted to contact the family or, on this record, to seek information concerning their condition. Here, "the natural father not only enjoyed the full use of his unrestricted personal funds, but also sat idly by and watched someone else fulfill his legal and moral obligations to [children] he knew [were] his own. In such an instance, the scales of equity greatly favor the [claimant] and preclude us from holding that the defense of laches is available to the natural father." *Anonymous Wife* v. *Anonymous Husband*, 153 Ariz. at 577-578. Here, the mother was occupied in working to support the children, while providing them with a home, care, and education.

In these circumstances we conclude that a claim of laches, an equitable defense, is not available to the father. "[He] who comes into equity must come with clean hands." *Fidelity Mgmt. & Research Co.* v. *Ostrander*, 40 Mass. App. Ct. 195, 200 (1996), quoting from *United States* v. *Perez-Torres*, 15 F.3d 403, 407 (5th Cir.), cert. denied, 513 U.S. 840 (1994). See *Attorney Gen.* v. *Thomas Solvent Co.*, 146 Mich. App. 55, 66 (1985) (defendant may not assert defense of laches where it does not have clean hands). On facts similar to ours but involving an order for child

support, a California court ruled that an action begun some thirty years after an order had entered, and approximately eleven years after the youngest child reached majority, was not subject to a defense of laches. *In re Marriage of Cutler*, 79 Cal. App. 4th 460, 479 (2000). In that case, the father's failure to provide support and remain in contact with his children over time deprived him of the use of laches as a defense to the action, because "[l]aches is an equitable remedy, and as a general rule, a party seeking equitable relief must come into court with clean hands." *Ibid.* In *Emery* v. *Smith*, 361 S.C. 207 (Ct. App. 2004), a ten-year delay in seeking benefits under a decree of divorce was not unreasonable where a husband failed to notify the wife of his retirement and the commencement of benefits to which she was entitled. The court ruled that the husband was "precluded from asserting laches due to his own unclean hands. Laches is a defense in equity, and one who comes to the court seeking equity must come with clean hands." *Id.* at 220. See *Precision Instrument Mfg. Co.* v. *Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945) (" '[H]e who comes into equity must come with clean hands.' This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief").

We are aware of the need to exercise caution in applying the maxim, so that the father is not "deprived of civil justice merely because he has sinned in the past; his wrongdoing must have been related directly to the present situation to justify his being barred." *Scattaretico* v. *Puglisi*, 60 Mass. App. Ct. 138, 143 (2003) (Kaplan, J.). As in *Scattaretico*, we conclude that this case falls readily within the "vital range of application" that attends the maxim. *Ibid.* The father's conduct bars his use of a laches defense, along with any claim that delay by the mother in bringing the suit was unreasonable.

*Determining amount of restitution.* In the area of marital support, we have only awarded restitution in conjunction with the interpretation and enforcement of alimony and support orders. See, e.g., *Keller* v. *O'Brien*, 425 Mass. at 778-779. See also *Heron* v. *Heron*, 428 Mass. 537, 542 (1998) (remanding for hearing on whether equity requires that plaintiff make restitu-

tion of all or part of alimony paid to her); *Taverna* v. *Pizzi*, 430 Mass. at 885.

Further, the court is not free to employ restitution as a form of damages. Rather, an order of restitution must rectify the father's unjust enrichment. "[R]estitution is not damages; restitution is a restoration required to prevent unjust enrichment" (emphasis omitted). 1 Dobbs, Law of Remedies § 4.1(1), at 557 (2d ed. 1993). "The fundamental substantive basis for restitution is that the defendant has been unjustly enriched by receiving something, tangible or intangible, that properly belongs to the plaintiff. Restitution rectifies unjust enrichment by forcing restoration to the plaintiff." *Id.* at § 4.1(2), at 557. "Unjust enrichment, as a basis for restitution, requires more than benefit. The benefit must be *unjust*, a quality that turns on the reasonable expectations of the parties." (Emphasis in original.) *Community Builders, Inc.* v. *Indian Motocycle Assocs.*, 44 Mass. App. Ct. 537, 560 (1998). See *Salamon* v. *Terra*, 394 Mass. 857, 859 (1985).

Fundamental to the calculation of restitution here is a determination of the amounts actually expended by the mother for the support of the children. Any calculation must also take into account the relative financial condition of both parties in each year of the children's minority. The number of minor children entitled to support in each year must be considered as well. We are persuaded that, although difficult, the calculations required to determine the amount by which father was unjustly enriched are not impossible; the parties have already provided much of the financial information necessary to the equation for the periods in question.

The circumstances of this case are such that the remedy of restitution for the mother is appropriate. Any measure of recovery, however, must be based not on amounts that the father should have paid in support of the children, but on amounts the mother expended on his behalf during the period prior to the children's emancipation.

The case is remanded to the Probate and Family Court for further proceedings consistent with this opinion.

*So ordered.*