Lemire, James R., J.
This action arises out of a dispute amongst former business associates. The plaintiff/defendant-in-counterclaim, Paul F. McGrath (“McGrath”), and defendants/plaintiffs-in-counterclaim, Paul J. Braney (“Braney”) and Frederick V. Mottle (“Mottle”), formed a partnership in 1991, which was succeeded by a private corporation in 1995, in which defendant/plaintiff-in-counterclaim William L. Flynn (“Flynn”) also had an interest. The defendants allege that McGrath fraudulently concealed from them his service to outside entities and the compensation he received from those entities. They assert the following claims against McGrath: (1) breach of fiduciary duly (Counterclaim I); (2) unjust enrichment (Counterclaim II); (3) breach of contract (Counterclaim III); (4) breach of implied covenant of good faith and fair dealing (Counterclaim IV); (5) violation of G.L.c. 93A (Counterclaim V); and (6) accounting (Counterclaim VI). The action is now before the court on McGrath’s motion to dismiss. For the reasons that follow, the motion is ALLOWED in part and DENIED in part.
BACKGROUND
The facts, taken from the counterclaim complaint and viewed in the light most favorable to the defendants, are as follows. In 1991, McGrath, Braney, Mottle, and another person formed a partnership that engaged in public accounting services. In 1995, Mottle McGrath Braney & Flynn, P.C. (“MMBF”) succeeded the partnership and continued to carry on its public accounting business. MMBF was a close corporation, with McGrath and each of the defendants owning a twenly-five percent equitable interest and serving as the only directors. McGrath and MMBF entered into a written employment agreement dated July 1, 1995 (“Employment Agreement”). Each of the defendants entered into substantially identical written employment agreements with MMBF, also dated July 1,1995.
*631 In the summer of 2007, MMBF’s assets were sold to Bollus Lynch, LLP (“Bollus Lynch"). After that sale closed, the defendants learned the following in August or September 2007: McGrath has served as a trustee of what is now known as Avidia Bank (“Bank”) since 1993. He later also became a director of the Bank. From approximately 2000 to 2007, McGrath was a director of Westborough Financial Services, Inc. (“WFSI”), the Bank’s parent company during those years. Since 1993, McGrath has also served as a trustee and/or director of other entities associated with the Bank and WFSI (collectively, “Bank companies”), and as a member and/or chairman of various committees of the Bank companies. McGrath fraudulently concealed from the defendants both his service to these outside entities and the compensation he received thereto, the latter of which he failed to pay over to or account to MMBF and/or the defendants. Further, McGrath devoted a substantial amount of his time, attention, efforts, and expertise to the Bank companies.
DISCUSSION
I. Motion to Dismiss Standard
When evaluating the legal sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court accepts as true all of the factual allegations of the complaint, and draws all reasonable inferences from the complaint in favor of the plaintiff. See Nader v. Citron, 372 Mass. 96, 98 (1977), abrogated on other grounds by Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008). To survive a motion to dismiss, a complaint must set forth the basis for the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level. . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ...” Id. At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief. . .” Id., quoting Bell Atl. Corp., 550 U.S. at 557.
II. Analysis
A. Statutes of Limitations
The defendants’ counterclaims are all based on McGrath’s allegedly fraudulent concealment of his service with the Bank companies and the compensation he received for that service. Because the counterclaims are permissive, they are considered to have been filed at the same time as McGrath’s complaint, July 23,2010.[2] See G.L.c. 260, §36; Bose Corp. v. Consumers Union of United States, Inc., 367 Mass. 424, 430-31 (1975). The defendants allege that they did not learn of McGrath’s association with the Bank companies until August or September of 2007. Accordingly, where the statutes of limitations applicable to the defendants’ counterclaims range from three years to six years, the counterclaims are timely based on the face of the counterclaim complaint.[3] Dismissal based on the statutes of limitations is therefore inappropriate.
B. Merits of Counterclaims 1. Breach of contract (Counterclaim III)[4]
The defendants allege in their answer that McGrath breached the Employment Agreement by (1) failing to devote his full time, attention, and best efforts to MMBFs business; (2) receiving compensation from outside sources without approval from MMBFs directors; and (3) failing to pay over to MMBF such compensation. Because the defendants are not parties to the Employment Agreement, Counterclaim III must proceed on a third-party beneficiary theoiy, i.e., to recover for McGrath’s alleged breach, the defendants must have been intended third-party beneficiaries of the Employment Agreement. See Miller v. Mooney, 431 Mass. 57, 61-62 (2000) (third-party beneficiaries include only those who are clearly and definitely intended as beneficiaries).
The defendants’ allegations are insufficient to show that they were intended beneficiaries of the Employment Agreement. Courts “look at the language and circumstances of the contract for indicia of intention.” Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 366 (1997). The only explicit language in the Employment Agreement the defendants cite as indicating an intention to benefit them is the provision that McGrath is to devote his full time, attention, and best efforts to MMBFs business.[5] There is no mention of the defendants in this provision, however, and the only reasonable view of it is that it was intended to benefit MMBF, the recipient of McGrath’s services as an employee.
As for the circumstances surrounding the agreement, the defendants first allege thqt'when McGrath executed the Employment Agreement, they (the defendants) understood it to include an implied covenant that any outside compensation McGrath received for accounting-related work would be;, paid over to MMBF.[6] While such a covenant máy 'indicate an intention to benefit the defendants, the court finds that the defendants have failed to plead the existence of the covenant with anything more than labels and conclusions. According to caselaw cited by the defendants, “the undertaking of each promisor in a contract must include any promises which a reasonable person in the position of the promisee would be justified in understanding were included.”[7] Stop & Shop, Inc. v. Ganem, 347 Mass. 697, 701 (1964) (citation omitted). Here, the defendants merely allege that they understood the Employment Agreement to include the implied covenant to pay over compensation. They do not assert any further facts suggesting how or why a reasonable person in their position would be justified in such an understanding. Where “[c]ovenants will not be extended by implication unless the implication is clear and undoubted,” the defendants’ conclusory allegation fails to show that an implied covenant may be read into the Employment Agreement. Id.
*632 Additionally, though “if the instrument as a whole produces a conviction that a particular result was fixedly desired although not expressed by formal words, that defect maybe supplied by implication and the underlying intention . . . may be effectuated, provided it is sufficiently declared by the entire instrument,” the defendants have not cited, and the court has not found, any provision in the Employment Agreement that declares an intention of the parties to include an implied covenant regarding outside compensation. Russo v. Enterprise Realty Co., 347 Mass. 655, 660 (1964) (citation omitted).
As further circumstantial indicia that McGrath and MMBF intended the Employment Agreement to benefit them, the defendants allege that around the same time that McGrath executed the agreement, they each entered into similar agreements with MMBF. They also allege that they and McGrath were the only shareholders and directors of MMBF. According to the defendants, “(i]t is unfathomable that all of the shareholders/directors of a small close corporation would enter into substantially identical employment contracts with the company in the absence of a clear and mutual understanding that each of them was intended to benefit from each other’s performance of his contract.” They have not cited any caselaw, however, indicating that employees, shareholders, or directors of close corporations stand in any different position regarding third-party beneficiary status than any other individual seeking such status.[8] Employees have been held to be third-party beneficiaries of their employers’ contracts for the provision of workers’ compensation benefits, but the Employment Agreement is not that type of contract. See Island Transp. Co. v. Cavanaugh, 54 Mass.App.Ct. 650, 651 (2002), citing Rae v. Air-Speed, Inc., 386 Mass. 187, 194-96 (1982).
Courts “are to distinguish situations where benefiting a third person is the intended purpose of one or both contracting parties, and situations where the benefiting is merely a means to the fulfilment of the parties’ purpose or a foreseeable consequence of the fulfilment.” Macksey v. Egan, 36 Mass.App.Ct. 463, 469 (1994). The defendants have failed to allege, and the Employment Agreement does not reveal, a “clear and definite” intent that McGrath and MMBF meant to benefit the defendants when they signed the Employment Agreement. Anderson, 424 Mass. at 366-67. Accordingly, Counterclaim III fails to state a claim upon which relief can be granted.
2. Unjust enrichment (Counterclaim II)
Under Counterclaim II, the defendants allege that McGrath improperly retained all of the compensation he received for his service with the Bank companies, thereby unjustly enriching himself at the expense of MMBF and/or the defendants. See Salomon v. Terra, 394 Mass. 857, 859 (1985), quoting Restatement of Restitution §1 (1937) (“A person who has been unjustly enriched at the expense of another is required to make restitution to the other”). The court concludes that the counterclaim fails to state a claim upon which relief can be granted as a matter of law.
The crux of an unjust enrichment claim is “unjust enrichment of one party and unjust detriment to the other party.” Id. The defendants have failed to show how McGrath’s retention of his compensation is unjust, i.e., how it violates principles of “equity and morality.” Id. They have not alleged that they provided any services to McGrath and/or the Bank, in return for which they were entitled to a portion of McGrath’s compensation from the Bank. See Malonis v. Harrington, 442 Mass. 692, 696-97 (2004) (attorney entitled to fair and reasonable value of services to prevent unjust enrichment of one party (the windfall of free legal services to the client) at the expense of another (the discharged attorney who expended time and resources for the client’s benefit)”); Hastoupis v. Gargas, 9 Mass.App.Ct. 27, 34-35 (1980) (individual who provided services to decedent entitled to restitution). Nor have they cited any caselaw indicating that, as a fiduciary, McGrath was obligated to share his compensation with the defendants and/or MMBF. See Santagate v. Tower, 64 Mass.App.Ct. 324, 329-30 (2005) (restitution appropriate only where “the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [one of them] to retain it” (citation omitted)). Further, as discussed above, the Employment Agreement contains no implied covenant regarding compensation McGrath received from entities other than MMBF.[9]
In short, there appears to be absolutely no basis for the defendants to claim that they are entitled to any portion of the compensation McGrath received from the Bank companies. The court therefore does not see how McGrath’s conduct goes “against the fundamental principles of justice or equiiy and good conscience.” Id. at 329 (citation omitted). Accordingly, Counterclaim II must be dismissed.
3. Breach of fiduciary duty (Counterclaim I)
The defendants allege that McGrath breached his fiduciary duties by: (1) failing to pay over the Bank companies’ compensation to the defendants and/or MMBF; (2) failing to disclose his service to the Bank companies; (3) failing to disclose receipt of the Bank companies’ compensation; (4) failing to devote his full time, attention, and best efforts to MMBF’s business; and (5) diverting his time, attention, and efforts away from MMBF’s business.
As an initial matter, the court notes that it has already determined that the defendants have failed to show that they were entitled to any portion of the compensation McGrath received from the Bank companies. Thus, to the extent that Counterclaim I is based on McGrath’s failure to pay over such compensation, it fails as a matter of law.
As to the defendants’ remaining allegations under Counterclaim I, the court finds that they present a colorable breach of fiduciary duly claim. McGrath’s alleged failure to disclose to the defendants his service *633 to and compensation from the Bank companies and failure to devote his full time, attention, and best efforts to MMBF’s business may amount to “avarice, expediency, or self-interest in derogation of [his] duty of loyalty to the other stockholders,” i.e., the defendants. Donahue v. Rodd Electrotype Co. of New England, 367 Mass. 578, 593 (1975) (stockholders in close corporation owe one another fiduciary duty of “utmost good faith and loyalty” (citation omitted)).
Accordingly, Counterclaim I states a claim upon which relief can be granted to the extent that it is based on McGrath’s failure to disclose his association with and diversion of his time and efforts to the Bank companies.
4.Breach of implied covenant of good faith and fair dealing (Counterclaim IV)
The defendants base Counterclaim IV on the Employment Agreement, asserting that McGrath’s conduct impaired their rights to the benefit of his performance of the agreement. The Employment Agreement undoubtedly includes an implied covenant of good faith and fair dealing. See Uno Restaurants, Inc. v. Boston Kertmore Realty Corp., 441 Mass. 376, 385 (2004) (“The covenant of good faith and fair dealing is implied in every contract”). The defendants, however, may not maintain a claim under that implied covenant because they are not third-party beneficiaries of the Employment Agreement, as the court has already concluded. Counterclaim IV will therefore be dismissed for failing to state a claim upon which relief can be granted.
5.Violation of G.L.c. 93A (Counterclaim V)
McGrath’s allegedly wrongful conduct as a shareholder and employee of MMBF is at issue in the defendants’ counterclaims, including Counterclaim V. As McGrath argues, such conduct cannot support a G.L.c. 93A claim.
“It is well established that disputes between parties in the same venture do not fall within the scope of G.L.c. 93A, §11.” Szalla v. Locke, 421 Mass. 448, 451 (1995); see also Manning v. Zuckerman, 388 Mass. 8, 12 (1983) (G.L.c. 93A, §11 prohibits unfair or deceptive acts “that may arise in dealings between discrete, independent business entities, and not those that may occur within a single company”). Disputes arising from the employment relationship and between shareholders of a close corporation fall under this rule.-[10] See Zimmerman v. Bogoff, 402 Mass. 650, 662-63 (1988) (dispute between close corporation shareholders does not fall under G.L.c. 93A, §11 because it was “principally a private grievance . . . [that] did not occur in the ordinary ‘conduct of any trade or commerce’ ”); Manning, 388 Mass. at 12-14 (G.L.c. 93A, §11 does not apply to “disputes arising from an employment relationship between an employee and the organization that employs him, or between an employee and other members of that organization”).
Counterclaim V therefore fails to state a claim upon which relief can be granted.
6.Accounting (Counterclaim VI)
Because McGrath may be liable to the defendants for breaching his fiduciary duties, he may be required to provide an accounting to them for purposes of Counterclaim I. Accordingly, Counterclaim VI cannot be dismissed at this time.[11]
ORDER
Based on the foregoing, it is hereby ORDERED that McGrath’s motion to dismiss be ALLOWED as to Counterclaim I to the extent that it is based on McGrath’s failure to pay over his outside compensation, Counterclaim II, Counterclaim III, Counterclaim IV, and Counterclaim V; and DENIED as to Counterclaim I to the extent that it is based on the remaining allegations and Counterclaim VI.

The counterclaims are permissive because they do not arise out of the same transaction or occurrence as McGrath’s claims. See Mass.R.Civ.P. 13. The former are based on McGrath’s service with the Bank companies, whereas the latter are based on circumstances surrounding the winding down of MMBF.

Regarding the statutes of limitations, McGrath cites his affidavit submitted in support of his motion to disqualify counsel (“Affidavit”), in which he asserts that the defendants had actual knowledge of his association with the Bank companies as early as 2003. See Demoulas v. Demoulas Super Mkts., Inc. 424 Mass. 501, 519-20 (1997) (under G.L.c. 260, §12, where fiduciary duty exists between parties, one party’s failure to fully disclose material facts giving rise to other party’s cause of action tolls statute of limitations unless other party has actual knowledge of facts). Even considering the Affdavit, which the court may do because it is part of the record of the case, see Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000), it only reveals potential factual disputes that may not be addressed on a motion to dismiss.

Because the validity of several counterclaims depends upon the validity of the defendants’ breach of contract counterclaim, the court will address that counterclaim first.

The court may consider the Employment Agreement, which McGrath attached to his motion to dismiss, where the defendants relied on it in writing the answer. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004).

In their allegation regarding the implied covenant, the defendants state that the covenant included paying over outside compensation only to MMBF. Earlier in the counterclaim complaint, however, the defendants allege that McG-rath should have paid over compensation to MMBF and/or them as individuals.

Of course, the defendants here are neither promisors nor promisees of the Employment Agreement.

Nor do the defendants cite any caselaw regarding the third-party beneficiary status of an employee pursuant to a co-employees’ employment agreement with any type of employer. If co-employees are per se beneficiaries of each other’s employment agreements with the employer, the employer could be exposed to considerable liability.

Even if the court had concluded that an implied covenant could be read into the Employment Agreement and that the defendants were third-party beneficiaries of that agreement, traditional contract principles do not apply to claims of unjust enrichment. See Malonis, 442 Mass. at 698 n.8; J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 793 (1986).

The defendants assert that the dispute between the parties here does not fall under this rule, and cite Ann & Hope, *634 Inc. v. Muratore, SUCV1990-1447, slip op. (Mass.Super. 1992) (Botsford, J.). In Ann & Hope, however, the conduct at issue took place outside the employment context where the employee directed corporate opportunities from his employer to a separate entity, for which the employee was acting as agent. See id. at 59-60. Further, the court found that the conduct occurred in the marketplace, unlike McGrath’s allegedly wrongful conduct here. See id. at 60, citing Manning, 388 Mass. at 12-14 (“[BJecause the warranties were either given or sold to Ann & Hope’s customers, the public at large was also implicated in the transaction. Such conduct does not fall within the ‘employment relationship’ exemption from G.L.c. 93A”).

McGrath argues that the bylaws of MMBF—which appear in the record as an exhibit to the Affidavit, see supra note 3—state that MMBF’s shareholders and directors need not provide an accounting of any profits derived from outside compensation. As the defendants have asserted, though, the section of the bylaws that McGrath relies on, titled “Conflict of Interest,” only addresses MMBF shareholders and directors who contract with MMBF or entities in which MMBF shareholders and directors have an interest that contract with MMBF.