NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-582

JOANNE M. PETITPAS

vs.

JESSE W. ST. GELAIS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal arises from a transaction in which the plaintiff, Joanne M. Petitpas, sought to obtain a loan from the defendant, Jesse W. St. Gelais, to pay off a tax lien.  However, the paperwork that St. Gelais prepared -- and that Petitpas signed -- instead reflected a sale of the property to St. Gelais for an amount significantly under market value.  When Petitpas realized what had occurred, she brought this action asserting claims for breach of fiduciary duty, fraudulent inducement, and unjust enrichment.  Following a jury trial, the judge entered a directed verdict in favor of St. Gelais on the breach of fiduciary duty claim, and the jury found St. Gelais not liable for fraudulent inducement.  The judge submitted the unjust enrichment claim to the jury on an advisory basis.  While the jury concluded that St. Gelais was not unjustly enriched, the

judge found otherwise and a judgment entered in favor of Petitpas.[1]  St. Gelais appeals, and we affirm.

Background.  We summarize the facts as set forth in the judge's findings, supplemented by uncontroverted facts drawn from documentary exhibits.  See Bruno v. Alliance Rental Group, LLC, 103 Mass. App. Ct. 170, 171 (2023).

Petitpas purchased property located in Acushnet in 2003. At the time of the underlying events, the property was valued at approximately $200,000.  At various times, Petitpas failed to pay her real estate taxes.  In 2017, she received notice of a tax lien complaint and "panicked."  She asked St. Gelais, who she knew as a neighbor and an insurance agent, if he could help. Petitpas had hoped that St. Gelais would offer her a loan; instead, he offered to purchase the property for $90,000. Petitpas rejected this offer.

Thereafter, St. Gelais made a second offer.  As Petitpas understood the offer, St. Gelais would pay the tax lien, which then totaled $18,848.60; Petitpas would continue to reside at the premises; Petitpas would repay St. Gelais at the end of one

_____

[1] St. Gelais asserted counterclaims for use and occupancy, breach of a contract for rent, and declaratory judgment.  The judge entered a directed verdict in favor of Petitpas on the use and occupancy claim, the jury found that St. Gelais did not have a contract with Petitpas for rent, and the judge declared that Petitpas was the rightful owner of the property.  None of these claims are before us.

year; and Petitpas would offer her deed as security to St. Gelais. St. Gelais asked Petitpas to sign three documents prepared by his attorney: a purchase and sale agreement, a quitclaim deed, and a settlement statement. The purchase and sale agreement stated that the "[sale] price [was] to be an assumption of debt including unpaid taxes, septic repair[,] cost of any repair or removal of building, all expenses including attorney['s] fees, closing costs, recording fees as well as a lease back agreement." The agreement further stated that Petitpas would "rent the property back from [St. Gelais] for [one] year at no cost."[2] A fair rental amount for the property was $1,200 per month, equaling $14,400 for the year.

The purchase and sale agreement also included a sentence suggesting that Petitpas seek advice from an attorney. Petitpas did contact an attorney who had handled some personal matters for her previously. The attorney told Petitpas that he could not represent her, but he advised Petitpas against signing the documents that St. Gelais had prepared. The attorney suggested that Petitpas try to borrow money from a family member. Nonetheless, Petitpas decided to go ahead and sign the documents.

---

[2] If Petitpas remained at the property at the end of the year, the agreement provided that "monthly rent [would] become due and payable to [St. Gelais] on the [first] day of each month."

Petitpas signed the purchase and sale agreement, quitclaim deed, and settlement statement at a meeting where she, St. Gelais and St. Gelais's attorney were present.  St. Gelais's attorney made a margin note on a closing document stating that Petitpas had spoken with her own attorney and that Petitpas's attorney had recommended that she go through with the transaction.  In fact, as noted, Petitpas's attorney advised Petitpas against going through with the transaction.  St. Gelais knew that Petitpas thought she was conveying her deed as security for a loan.

Following the closing, Petitpas continued to reside at the premises.  St. Gelais purchased insurance for the property, paid off the tax lien, and continued to pay the real estate taxes.  However, he made no repairs to the septic system or to any other part of the property.  Within a year, Petitpas contacted St. Gelais about repaying the loan and having the deed transferred back to her.  Petitpas asked St. Gelais to tell her what she owed him.  St. Gelais did not provide an answer to that question but informed her that rent in the amount of $1200 per month was due.  Shortly thereafter, he placed a for sale sign in the front yard.

This lawsuit followed.  As noted, the judge found that St. Gelais was unjustly enriched by the transaction.  The judgment provided as follows:  "Upon reimbursement to . . . St. Gelais by

4

. . . Petitpas in the amount of $42,266.01, . . . St. Gelais is [ordered] to execute a [q]uitclaim [d]eed, transferring ownership of the property . . . back to . . . Petitpas."  The amount of $42,266.01 reflected the sum that St. Gelais spent purchasing insurance and paying taxes, plus interest.

Discussion.  The question before us is whether the judge erred in finding that St. Gelais was unjustly enriched.  Unjust enrichment is the "retention of money or property of another against the fundamental principles of justice or equity and good conscience" (citation omitted).  Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005).  Whether the retention of property is unjust involves "[c]onsiderations of equity and morality," Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 644 (2013), quoting Salamon v. Terra, 394 Mass. 857, 859 (1985), and "turns on the reasonable expectations of the parties."  Community Bldrs., Inc. v. Indian Motocycle Assocs., Inc., 44 Mass. App. Ct. 537, 560 (1998).  Restitution is appropriate if, "as between the two persons, it is unjust for [the defendant] to retain [the property]" (citation omitted).  Keller v. O'Brien, 425 Mass. 774, 778 (1997).

Applying these standards, there was no error in the judge's finding that St. Gelais was unjustly enriched.  St. Gelais offered to purchase the property for $90,000, significantly less than the property was valued.  Petitpas rejected that offer.

5

St. Gelais then proposed the arrangement where he would pay the tax lien and allow Petitpas to reside on the premises. The value of those items was even less than the $90,000 offer that Petitpas had already rejected, and when all was said and done, Petitpas netted no monetary profit at all upon the transfer of her property to St. Gelais. As the judge found, "[t]he inequity of the transaction was undoubtedly noted by . . . St. Gelais'[s] attorney, who felt the need to note in the margin of a closing document that Petitpas had consulted counsel." The transaction was so inequitable that it only makes sense if Petitpas was conveying her deed as security for a loan. That was Petitpas's reasonable understanding, and St. Gelais knew it. See Community Bldrs., Inc., 44 Mass. App. Ct. at 560. In these circumstances, allowing St. Gelais to retain a property that he gained by exploiting Petitpas's reasonable understanding would be "against the fundamental principles of justice or equity and good conscience" (citation omitted). Santagate, 64 Mass. App. Ct. at 329.[3]

---

[3] We are unpersuaded by St. Gelais's argument that the trial court improperly "focused on the purported inadequacy of the consideration paid in view of the assessed value of the property." This case was not just about the inadequacy of the consideration; it was also about the parties' understanding of the transaction.

St. Gelais argues that the judgment in favor of Petitpas for unjust enrichment cannot stand where she did not prevail on her claims for breach of fiduciary duty and fraudulent inducement.[4]  In part, St. Gelais argues that Petitpas's claims for breach of fiduciary duty and fraudulent inducement gave her an adequate remedy at law, and that an equitable remedy for unjust enrichment is not available to someone who has an adequate remedy at law.  See Santagate, 65 Mass. App. Ct. at 329.  This argument founders on its premise, as the remedy at law available to Petitpas -- money damages -- would have been inadequate where it would not have effected a return of the property to Petitpas.  The real crux of St. Gelais's argument is that the judgment in favor of Petitpas for unjust enrichment is inconsistent with the judgments on Petitpas's other claims.  We discern no inconsistency.[5]  Unjust enrichment may result from the breach of a fiduciary duty or fraudulent inducement, but it may also result from a variety of "other circumstances."  Maffei v.

---

[4] As noted, the jury also concluded that St. Gelais was not unjustly enriched.  However, the unjust enrichment claim was submitted to the jury on an advisory basis.  Accordingly, the judge was not bound by the jury's conclusion.  See Fine v. Cohen, 35 Mass. App. Ct. 610, 614 (1993).

[5] The judge did state that St. Gelais "acted fraudulently when he knew that Petitpas did not want to sell her property." However, when read in context, the statement goes toward whether St. Gelais was honest in his dealings with Petitpas, not whether St. Gelais's conduct satisfied the legal elements of fraudulent inducement.

7

<u>Roman Catholic Archbishop of Boston</u>, 449 Mass. 235, 246 (2007), cert. denied, 552 U.S. 1099 (2008).  This is one of those cases that involved "other circumstances," including the inequity of the terms, Petitpas's reasonable understanding that the transaction therefore had to be a loan, and St. Gelais's knowledge of that fact.

<u>Judgment affirmed</u>.

By the Court (Vuono,
   Wolohojian[6] & Toone, JJ.[7]),

*[signature]*

Assistant Clerk

Entered:  April 29, 2024.

---

[6] Justice Wolohojian participated in the deliberation on this case while an Associate Justice of this court, prior to her appointment as an Associate Justice of the Supreme Judicial Court.

[7] The panelists are listed in order of seniority.